### PENNSYLVANIA R. CO. et al. v. HUSTON.
### No. 6868.

Circuit Court of Appeals, Sixth Circuit.
Feb. 5, 1936.

Lawrence D. Stanley, of Columbus, Ohio (Sherman B. Randall and Henderson, Burr, Randall & Porter, all of Columbus, Ohio, on the brief), for appellants.

Thos. H. Clark, of Columbus, Ohio, for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The controversy revolves about the validity and assignability of contracts between railroads and a storage and transfer company for the handling by the latter of the former's unclaimed package freight. The suit below was by the assignee of the storage company against the lessee of the contracting railroads, and the questions here presented were preserved for review by a motion for directed verdict on behalf of the defendants. It is the denial of the motion, with the resulting verdict for the plaintiff, that is the principal error assigned.

In 1904 the Buckeye Transfer & Storage Company, a Maine corporation, entered into two contracts, one with the Cleveland, Akron & Columbus Railway Company, and the other with the Pittsburgh, Cincinnati, Chicago & St. Louis Railroad Company, whereby it agreed to call for unclaimed

package freight at each of the roads, to remove such freight to its storage warehouse, to pay to the railroad all of the charges on such freight, to hold it in storage, and to deliver it to the consignee, shipper, or owner entitled to receive it upon proper evidence of ownership, with authority to sell all property remaining uncalled for at public auction according to law, and relieving the railroad from any liability for loss or injury to the property. The railroads agreed to deliver all such freight upon payment of charges free from any lien or claim on their part, either upon the property or the proceeds thereafter collected or realized by sale. The two contracts were substantially identical, and each contained a provision that it might be terminated by either party thereto upon six months' written notice to the other party.

In November, 1905, the Buckeye Transfer & Storage Company sold all of its assets to Buckeye Transfer & Storage Company, an Ohio corporation. In 1921, the appellee, Huston, acquired all the stock of the Ohio company, dissolved the corporation, surrendered its charter, and took over its property and business, which thereafter he operated individually. There was no specific assignment of the contracts here involved from the Ohio corporation to Huston. On March 26, 1921, the Pennsylvania Railroad Company leased all of the lines of the two contracting railroads, and by its lease it may be assumed for purposes of decision, though the point is in controversy, that it assumed all of their obligations and liabilities. The Pennsylvania permitted Huston to take care of its unclaimed freight until the end of May, 1922, when it made other arrangements, but failed to give notice to Huston of the termination of the contracts as therein provided. It is undisputed that the Pennsylvania had no knowledge of the fact that the Maine corporation had sold its assets to the Ohio corporation, or that Huston had acquired the latter's business until the time when it made the new arrangement for its unclaimed freight. The suit was for lost profits for the six months' period beginning June, 1922, and the judgment from which the appeal is taken was for the plaintiff.

[1, 2] The first defense to the plaintiff's action was on the ground that the contracts were not legal or enforceable because lacking in definiteness and mutuality. This contention was rested upon the provision in each that "the second party will from time to time as requested by the agents of the first party, call for all such unclaimed package freight," and upon the use of the phrase "may be delivered * * * for storage" in the clause dealing with the delivery and receipt of freight in carload or less than carload lots consigned to order. Whatever might be the implication of these phrases in other contexts, it is clear from the preamble to each contract, wherein is recited the need of the railroad to clear its freight station of unclaimed freight and its desire to have it removed and properly stored at the risk and expense of the shipper and to promptly receive its freight charges, and wherein is also recited the storage company's facilities for the storage of such goods, and it is likewise clear from the language of the second operable clause of the contract, which refers to "all such freight" that it was the intention of the parties, sufficiently expressed, that the storage company would call for and take away all unclaimed package freight and relieve the road from risk, expense, and responsibility therefor. Were there doubt about this, and we think there is none, it would be resolved by the practical construction given to the contract by each of the original parties thereto for a period of practically eighteen years. It has been repeatedly held that a contract is not subject to the objection that it is indefinite so long as the parties can tell when it has been performed, and this case falls within the line of cases represented by Mills-Morris Co. v. Champion Spark Plug Co., 7 F. (2d) 38 (C.C.A.6), Moon Motor Car Co. of New York v. Moon Motor Car Co., Inc., 29 F.(2d) 3, 4 (C.C.A.2), and Ken-Rad Corp. v. R. C. Bohannan, Inc., 80 F.(2d) 251 (C. C.A.6), decided December 3, 1935, rather than within the line of cases typified by Curtis Candy Co. v. Silberman, 45 F.(2d) 451 (C.C.A.6).

The second attack upon the enforceability of the contract is based upon the principle that when one of two contracting parties ceases business its executory agreements end, or at least that cessation of business excuses performance, a condition to such effect being implied in spite of the fact that its obligations may have been unqualified. This principle is asserted upon authority of Stockton Commission Co., Inc., v. Narragansett Cotton Mills, Inc., 11 F. (2d) 618 (D.C.R.I.), certain texts, and a line of English cases, Hamlyn v. Wood & Co., 2 Q. B. 488; Lazarus v. Cairn Line of Steamships, Ltd., 106 L.T.R. 378; Northey

v. Trevillion, 18 T.L.R. 648, wherein it was held that unless an undertaking to that effect is clearly indicated by the terms of the contract, it is not a reasonable implication that either contracting party bargained away its right to discontinue business. We neither impugn nor give countenance to the soundness of the asserted doctrine when we reject its application here as against the Pennsylvania Railroad Company, which assumed the obligation of the original parties and succeeded to their rights. To hold that when one retires from business no liability remains under an executory contract which may be assumed by a successor would also require a holding that no beneficial interest in such contract persists, and that the retiring party has nothing to sell. This is certainly not the law.

The appellant's next contention is that the contracts here involved are executory and continuing contracts involving a relationship of personal confidence, couple rights with obligations, and are therefore not assignable. Here we think the appellant is on more solid ground. The federal rule in this respect is clearly stated in Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U.S. 379, 8 S.Ct. 1308, 1309, 32 L.Ed. 246, where it was said: "At the present day, no doubt, an agreement to pay money, or to deliver goods, may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him, or by some other stipulation, which manifests the intention of the parties that it shall not be assignable. But every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent." This doctrine has been approved in a long line of Supreme Court decisions, including Burck v. Taylor, 152 U.S. 634, 14 S.Ct. 696, 38 L.Ed. 578; Delaware County Commissioners v. Diebold Safe & Lock Co., 133 U.S. 473, 10 S.Ct. 399, 33 L.Ed. 674; American Colortype Co. v. Continental Colortype Co., 188 U.S. 104, 105, 23 S.Ct. 265, 47 L.Ed. 404. The better reasoned state authorities are to the same effect. Winchester v. Howard, 97 Mass. 303, 305, 93 Am.Dec. 93; Boston Ice Co. v. Potter, 123 Mass. 28, 25 Am. Rep. 9; Paige v. Faure, 229 N.Y. 114, 127 N.E. 898, 10 A.L.R. 649. That the contracts here considered come within the class that are not assignable under the asserted doctrine seems to us clear, since the facts of the instant case are not materially distinguishable from those of the Arkansas Valley Smelting Company Case, wherein the defendant mining company entered into a contract with a smelting company whereby the mining company was to deliver ore to the smelting company and the smelting company was to extract the silver and to return the metal to the mining company. It was held that the contract was not assignable by the smelting company. That this case is considered by the profession a leading case upon the subject is evident from the fact that it forms the basis for comment and illustration in Restatement of Contracts, § 152.

We think it immaterial and not governing decision that the assignment by the Maine corporation to the Ohio corporation, and by the Ohio corporation to Huston, were "more formal and technical than real." From a recognition of the principle that every one has a right to select and determine with whom he will contract, it is inevitable that it is the judgment of the contracting party and not of the court that must control, and that this is not a case for the application of the equitable doctrine that in order to prevent fraud the court may look through form to substance.

Conceding that the present issue is concerned with matters of general law in which we are not bound by local law, yet, the contract being an Ohio contract, there is urged upon us the reasoning of the Supreme Court of Ohio in Himrod Furnace Co. v. Cleveland & Mahoning Railroad Co., 22 OhioSt. 451. Even were we disposed in the interests of comity and uniformity to follow Ohio law and recognize power to do so in the face of the clear holding of the United States Supreme Court and the general trend of State decisions, it is clear that there was present in the Himrod Case a novation that is absent here, for however the Ohio court may have reasoned, it had as a basis for decision "the further fact that the defendant, for several years, with full knowledge of all the facts, recognized and dealt with the plaintiff as the successor of Kimball and associates, and entitled to all the benefits of said contract." The motion for directed verdict should have been granted.

Judgment reversed and cause remanded for further proceedings consistent herewith.