**WEST POINT–PEPPERELL, INC.,**
**Plaintiff,**

v.

**O. W. BRADSHAW, Defendant.**

**Civ. A. No. 1033–E.**

United States District Court,
M. D. Alabama, E. D.

April 22, 1974.

Yetta G. Samford, Jr., Opelika, Ala., for plaintiff.

Ruth S. Sullivan, Dadeville, Ala., for defendant.

## PARTIAL SUMMARY JUDGMENT

### VARNER, District Judge.

This cause is submitted on Plaintiff's motion for summary judgment filed herein April 2, 1974. Plaintiff, a textile manufacturer, claims to have purchased in the spring of 1973 from the Defendant all cotton to be produced in the fall of 1973 on approximately 230 acres in Tallapoosa County, Alabama, such cotton to be delivered upon ginning thereof at the Montgomery Cotton Company in Opelika, Alabama, for 32 cents a pound. Said cotton was contracted for at 31 cents a pound by the late T. Penn Montgomery, Sr., doing business as the Montgomery Cotton Company, by virtue of a written contract admittedly signed by the Defendant. The Defendant had been allotted 222.5 acres of cotton in Tallapoosa County, Alabama, but the allotment was lifted, and he harvested 120 bales of cotton from about 300 acres in Tallapoosa County, Alabama, in 1973. The Defendant insists that the contract was signed in blank; that the parties contemplated the purchase of all cotton to be produced by the Defendant in both Tallapoosa and Chambers Counties for said period of time; but that the said T. Penn Montgomery, Sr., agreed to rescind the contract orally after it had been executed by the Defendant. The Plaintiff admits that it agreed to a price of 32 cents a pound for said cotton, and it is willing to execute the contract on its part at said price of 32 cents a pound.

■ RECISION. The Defendant contends, however, that, after discussion of the 32-cent-pound figure, the said T. Penn Montgomery, Sr., agreed to cancel the contract orally. The only evidence thereof is the oral testimony of Defendant, and Plaintiff contends that such testimony is barred by Code of Alabama, Title 7, § 433, and by the parol evidence rule, Code of Alabama, Title 7A, § 2–209 (2). Code of Alabama, Title 7, § 433, states: "* * * (N)o person having a pecuniary interest in the result of the suit * * * shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person * * * when such deceased person, at the time of such transaction or statement, acted in any representative * * * relation whatsoever to the party against whom such testimony is sought to be introduced, * * *." This statute applies to transactions with deceased agents of an opposing party. National Union Fire Ins. Co. v. Weatherwax & Gentry, 247 Ala. 143, 22 So.2d 733.

■ Code of Alabama, Title 7A, § 2–209(2), provides in pertinent part: "A signed agreement which excludes modification * * * except by a signed writing cannot be otherwise modified * * *." The original contract is enforceable at 31 cents a pound unless the subsequent agreement to pay 32 cents a pound is an admitted waiver thereof. "Although an attempt at modification * * * does not satisfy the requirements * * *, it can operate as a waiver." Code of Alabama, Title 7A, § 2–209(4). Plaintiff, in pleading an agreement to the 32-cent price, is effectively conceding having waived the lesser price.

■ UNCONSCIONABILITY. The Defendant further contends that the Plaintiff's alleged unconscionable restraint of trade bars specific perform-

ance of the Defendant's contract to sell the cotton because of the equitable principle that one who comes into equity must come with clean hands. The Defendant alleges that the contract for the purchase of cotton at 32 cents a pound at a time when the market price of cotton of like classification was 80-odd cents a pound is in violation of Code of Alabama, Title 7A, § 2–302, in that said contract allegedly was unconscionable and is, therefore, unenforceable. Apparently, the Defendant seeks to combine an allegedly unconscionable contract, because of a price differential developing between the date of execution and the date of performance of the contract for sale, with an alleged restraint of trade so as to form an equitable defense under the "clean hands" doctrine. The statute in question, in pertinent part, is as follows:

§ 2–302. "If the court as a matter of law finds the contract * * * to have been unconscionable at the time it was made the court may refuse to enforce the contract * * *."

The statute contemplates the court's determining, as a matter of law, upon consideration of the contract itself and the circumstances at the time such contract was made, whether or not such contract was unconscionable under the circumstances then in existence. The price for which the cotton was contracted was not alleged to have been substantially out of line with the market price of cotton at the time the contract was made, but it was alleged that Plaintiff and others had a peculiar knowledge that the price of cotton would spectacularly rise and that said persons sought to control the trade of cotton by publishing among all dealers in cotton in this area a computerized list of cotton purchase contracts outstanding for cotton to have been produced in 1973 and that, because his name was on the list, Defendant was delayed in selling his cotton. In the allegedly offensive publication ("Notice" on page 3 of the first "Exhibit B" attached to what appears to be a third-party proceeding filed on March 22, 1974, by Defendant), the following language appears:

"Persons utilizing this publication are cautioned that the proper and appropriate use of the contents contemplates that buyers and sellers listed herein be personally contacted, if any question should arise, to ascertain whether the information published is a reasonably accurate and contemporary statement concerning the status of that cotton."

Clearly the purpose of the publication, like the purpose of recording acts, was to provide a ready source of information from which, upon proper inquiry, fraud might be prevented. Persons are not prohibited from restraining trade reasonably in an effort to protect legal rights of their own. Code of Alabama, Title 7, § 124; Denton v. Alabama Cotton Ass'n., 30 Ala. 429, 7 So.2d 504. See also Maple Flooring, et al v. United States, 268 U.S. 563, 45 S.Ct. 578, 69 L. Ed. 1093; Cement Manufacturing Protective Ass'n. v. United States, 268 U.S. 588, 45 S.Ct. 586, 69 L.Ed. 1104.

 The Defendant insists that the alleged contract with the Plaintiff was unconscionable at the time it was made. The Supreme Court of the United States in Hume v. United States, (1889) 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393, defined "unconscionable", in referring to an unconscionable contract, as being the following:

"Such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."

In Williams v. Walker-Thomas Furniture Co., (1965) 121 App.D.C. 315, 350 F.2d 445, 18 A.L.R.3rd 1297, the Court, in discussing the fact that the element of unconscionability in order to justify unenforceability of the contract must be present at the time the contract is made, said, in substance, that unconscionability included:

"(A)n absence of meaningful choice on the part of one of the parties together with contract terms which are

unreasonably favorable to the other party."

The Court said further that:

"The presence of a meaningful choice can only be determined by consideration of all the circumstances surrounding the transaction, and might be negated by 'gross inequality of bargaining power', it being relevant to ascertain whether 'each party * * * considering the obvious education or lack of it (had) a reasonable opportunity to understand the terms of the contract or (whether) the important terms (were) hidden in a maze of fine print and minimized by deceptive sales practices'."

The Court recognized the usual rule that one who signs an agreement is bound by its terms. The question of unconscionability of a contract is for the Court, as a matter of law. Code of Alabama, Title 7A, § 2-302. There is no issue of fact for the jury thereon. There is no issue of fact which would justify this Court's determining that the Plaintiff should be barred by the "clean hands" doctrine from enforcing the Defendant's contract to sell the cotton because of Plaintiff's alleged attempt to restrain trade. The facts alleged simply do not justify a conclusion of an attempt to restrain trade or of an unconscionable contract.

 ASSIGNABILITY OF CONTRACT. The Defendant takes the position that the contract declared upon provided no rights on the Plaintiff and that, in effect, the contract could not be assigned. The rule is well established that a contract for sale and purchase is assignable. Code of Alabama, Title 7A, § 2-210; Pennsylvania R.R. v. Huston, 6 Cir., 81 F.2d 704; Bowman & Co. v. Er-win, 468 F.2d 1293 (5 CCA); Wilks v. Georgia Pacific R.R Co., 79 Ala. 180. Neither may the Defendant successfully contend that the oral assignment (if the assignment were oral) was insufficient. The Statute of Frauds may not be raised by one not a party to the oral contract. Blowers v. First National Bank, 45 Ala. App. 485, 232 So.2d 666. In any event, Plaintiff says, and there is no evidence to the contrary, that Montgomery bought as Plaintiff's agent, and there was no assignment—nor need there be —of the contract.

UNCERTAINTY. The Defendant contends that the contract for the sale of said cotton (providing for sale of all cotton to be produced upon 230 acres, more or less, in Tallapoosa County, Alabama) was fatally vague in not describing any particular cotton to be delivered.[1] The Plaintiff argues that the Defendant had allotments in Tallapoosa County, Alabama, of 222.5 acres of cotton, said acres being those particular 230 acres, more or less, mentioned in said contract; that its agent knew of and referred to said acreage when he filled out the contract; and that it is entitled to delivery of all that cotton produced on said 222.5 acres.

 Defendant contends that there were approximately 350 acres of cotton planted by him in the year 1973, 300 acres of which lie in Tallapoosa County, Alabama, and 51.5 acres of which lie in Chambers County, Alabama, and that it is, therefore, impossible to determine what 230 acres, more or less, of cotton produced by him in Tallapoosa County, Alabama, was intended to be contracted for at the time the contract was entered. There is no substantial

---

1. "§ 2-201. *Formal requirements; statute of frauds.*—* * * A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing. * * *." Code of Alabama, Title 7A.

"§ 55. *What cannot be specifically enforced.*—The following obligations cannot be specifically enforced: * * * An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable." Code of Alabama, Title 9.

disagreement as to these basic facts. The only disagreement is as to the conclusion to be drawn from the admitted facts. The Plaintiff seeks a construction consistent with the validity of the contract, and the Defendant insists upon a construction invalidating the contract. With a choice between a valid or an invalid construction, the Court has a duty to accept the construction which will uphold, rather than destroy, the validity of the contract. Liberty National Bank & Trust Co. v. Bank of America National Trust & Savings Ass'n., 10 Cir., 218 F. 2d 831; Wier v. Texas Co., 5 Cir., 180 F.2d 465; Universal Winding Co. v. Gibbs Mach. Co., D.C.N.C., 179 F.Supp. 394. The Court is, therefore, of the opinion that the parties agreed to a sale of that cotton grown on the 222.5 acres of Tallapoosa County land allotted to Defendant for cotton production in 1973.

If the Defendant, by virtue of confusing said cotton produced on his allotted acres with other cotton produced by him so that said cotton may not be determined either in amount, quality or grade, then the law of confusion of goods must be applied to the cotton held by Mr. Bradshaw upon a trial of the remaining issues in this case.

It, therefore, appears that partial summary judgment should issue in favor of the Plaintiff.

 DISMISSAL OF THIRD-PARTY ACTION. The Plaintiff insists upon dismissal of the third-party action against both the Plaintiff and the named Third-Party Defendant, T. Penn Montgomery, Jr. The Defendant attempts to state a cause of action against T. Penn Montgomery, Jr., in a third-party proceeding for the Defendant's damages resulting from his inability to sell cotton admittedly unencumbered by the subject sales contract. The Defendant claims this right to bring said Third-Party Defendant, T. Penn Montgomery, Jr., into this suit pursuant to Federal Rules of Civil Procedure, Rule 14, providing that defendants may bring into a cause of action such third-party defendants as may be liable over to the defendant for all or part of plaintiff's claim. The third-party statute does not contemplate an institution of a new cause of action against a third-party defendant, and the third-party complaint in this cause alleges, not that the Third-Party Defendant is liable over to the Defendant for such damages as the Defendant may be liable to the Plaintiff for, but that the Third-Party Defendant is liable to the Defendant on a cause of action independent of the original cause of action. Such a pleading is not within the contemplation of third-party actions under federal law, and the same should be dismissed. It is, therefore,

Ordered, Adjudged and Decreed by the Court that the Defendant Bradshaw entered into a valid written contract with the Plaintiff through its agent, T. Penn Montgomery, Sr., for the purchase of all cotton produced during the 1973 season on that certain 222.5 acres of land allotted to Defendant for production of cotton in Tallapoosa County, Alabama, during said season. The Court reserves judgment of the question of how much cotton and what cotton should be delivered as provided in the contract. That matter may not be determined on the evidence now before this Court. It is further

Ordered by this Court that the counterclaim be, and the same is hereby, dismissed.