E & W BUILDING MATERIAL CO., INC., Plaintiff,

Charles D. Starling and Sandra S. Starling, Plaintiff-Intervenors,

v.

AMERICAN SAVINGS & LOAN ASSOCIATION OF BRAZORIA COUNTY, TEXAS, Defendant.

Civ. A. No. 86–H–414–S.

United States District Court, M.D. Alabama, S.D.

Oct. 21, 1986.

**290**

Michael Crespi, Headland, Ala., Charles W. Woodham, Abbeville, Ala., for plaintiff.

Sirote, Permutt, Friend, Friedman, Held & Apolinsky, P.C., Thomas H. Brown, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

HOBBS, Chief Judge.

This diversity case involves a claim by plaintiff, E & W Building Material Co., Inc. (E & W), and plaintiff intervenors, Charles and Sandra Starling (Starling) against defendant, American Savings & Loan Association of Brazoria County, Texas (American Savings), for declaratory judgment that the mortgage loan agreement entered into between Starling and American Savings' assignor, First American Mortgage Co., Inc. (First American) is void and unenforceable. This nonjury case was tried before this Court on October 7, 1986. For the reasons herein set forth, the Court denies the relief sought by plaintiff and plaintiff-intervenors.

Plaintiff E & W sold building materials to Starling, a housebuilder, for the construction of several houses, including his private residence. Although Mr. Starling paid E & W for the materials used in several of these houses, he fell behind on his payments for several others, including those for his own residence. As a result, E & W filed a materialman's lien on Starling's residence on June 20, 1985, in the amount of $12,381.42. In addition, E & W obtained a judgment against Starling for $29,982.11, representing the delinquent amount owed on Starling's residence as well as approximately $17,600.00 owed for materials used in constructing other houses. Thereafter, E & W executed on the judgment by levy and sale of the Starling residence and received a sheriff's deed, which it recorded on December 23, 1985. E & W has possession of the residence. The Starlings' right to redeem will expire in December, 1986.

On April 11, 1985, prior to the filing of the E & W lien or the receipt of its judgment, Starling executed a note and mortgage on the subject residence to First American as security for a loan of $51,775.00. Starling received $35,124.04 ($51,775.00 less $16,650.96 in settlement costs). Included in these settlement costs was a refundable origination fee of $11,390.50. The loan was to extend for fifteen years at the annual rate (APR) of 24.10 percent. The mortgage was recorded on April 17, 1985, more than two months prior to E & W's act of filing a materialman's lien. Thereafter, the First American note and mortgage were assigned to the defendant American Savings.

E & W contends that it is the lawful titleholder to the property because the First American mortgage is invalid being based on an underlying note which contains unconscionable and usurious terms. The Starlings as plaintiff intervenors contend that they have a right of redemption and join in E & W's claim that the mortgage is invalid because the underlying note contains unconscionable and usurious terms.

Although the defendant has sought to raise numerous defenses to the plaintiffs' claim that the First American mortgage and note are invalid because the note's terms are unconscionable, the Court finds for the defendant on the issue of unconscionability and does not address other defenses sought to be raised by the defendant.

### Unconscionability

■ The parties concede that Alabama law does not set any usury limit for loans over $2,000. The issue, therefore, is whether the terms of this note are "unconscionable." Alabama law provides no implicit standard of unconscionability. Each case must be considered on its own facts.

Ala.Code § 5-19-16 (1981); *Broadway v. Household Finance Corp.*, 351 So.2d 1373, 1377 (Ala.Civ.App.1977). In this case, although the Court considers the interest rate, origination fee, and total settlement costs to be excessive, this Court does not find that the loan agreement taken as a whole is unconscionable given the particular circumstances surrounding this case.

Mr. Starling was a bad credit risk due to his bankruptcy in 1980. He originally approached AmSouth Bank in Dothan for the loan, and filled out its application form and had an appraisal, but he dropped the matter because he felt he could not get the loan approved because of his credit history. It is undisputed that creditors charge debtors with poor credit histories a higher than average interest rate or origination fee. The greater than average risk First American undertook in this transaction explains, to an extent, the unusually high interest rate charged.

In addition, while the origination fee of $11,390 was excessive, it was also refundable. Had Starling exercised the right clearly expressed in the note to prepay the obligation "without penalty," the origination fee would have been refunded. First American's agents so informed Starling at the loan closing. Starling admitted during testimony that he was aware that the origination fee was high but refundable. In fact, he acknowledged that at the time he made the loan he planned on refinancing the loan and obtaining a refund of the origination fee. Starling admitted that the fact that he could get a refund of the origination fee was an important feature of the loan.

Had Starling prepaid the loan as he intended, he would have received the refunded origination fee. Refund of the origination fee would have greatly reduced the total cost of the loan. Accordingly, the actual interest paid on the loan would have been at a much lower rate.

Rescission of a contract for unconscionability is an extraordinary remedy usually reserved for the protection of the unsophisticated and uneducated. See, for example, *Community Acceptance Corp. v. Kinchen*, 417 So.2d 22 (La.App.1982). While the loan agreement in question was probably a bad bargain for Starling, this Court is impressed that Mr. Starling was a sophisticated and knowledgeable borrower who was fully aware of all of the terms of the note.

As part of his business as a housebuilder, Starling directly participated in a total of approximately $16,750,000.00 in loan and mortgage transactions involving approximately five hundred twenty-six homes. Starling was familiar with interest rates, origination fees, discount points, and typical loan provisions. He knew that the interest rate and origination fee were unusually high, but accepted them without objection. He acknowledged that he applied for a loan with First American because he knew that it would lend to poor credit risks, albeit at higher rates of interest.

There is no evidence that Starling was "taken in" by a party possessing vastly superior knowledge and experience. There is no evidence of trickery or deception on the part of First American. First American's agents fully informed Starling of the critical features of the loan. Starling had ample opportunity to review the documents and understood the essential terms of the agreement.

E & W and Starling produced evidence establishing that Starling had a serious drinking problem at all times relevant to this dispute. Starling testified that he was in the habit of drinking a fifth of liquor six nights a week during the period in question. He testified that he had consumed a fifth of whiskey the night before the closing. However, Starling admitted that he was sober during the actual closing.

Furthermore, Starling had three days to rescind under the law. First American's agents informed Starling of this right, and Starling testified that he knew that he could cancel the loan agreement for any

reason without cost to him during those three days.

■ Contract rescission on the grounds of unconscionability is an action in equity, not law. The defendant contends that Starling should not be entitled to receive equitable relief due to his own fraudulent conduct. This contention is well grounded. As part of the application process, Starling executed an owner's affidavit before a notary public, wherein Starling swore that there were no monies owed or liens on his residence. Starling admits he knew at the time that his statement under oath was not true, since, in reality, Starling owed over $12,000.00 to E & W as well as sums to other materialmen. Starling also admits he knew that First American relied on his false statement in making the loan. Furthermore, Starling's own fraudulent and false statements were probable reasons that he could not get the refinancing which he intended to secure at the time he made his loan. This Court will not grant equitable relief in the form of contract rescission to a party who fraudulently induced the other to enter the contract.

After considering the totality of the circumstances, this Court holds that the loan agreement in question is not unconscionable, either in part or as a whole. Accordingly, judgment will be entered in favor of the defendant.

## JUDGMENT

In accordance with the attached memorandum opinion, it is the ORDER, JUDGMENT and DECREE of this Court that plaintiff, E & W Building Material Co., Inc. and plaintiff-intervenors, Charles D. Starling and Sandra S. Starling's requests for declaratory judgment in their complaints against defendant, American Savings & Loan Association of Brazoria County, Texas be and the same are hereby DENIED.

It is further ORDERED that the court costs incurred in this proceeding be and the same are hereby taxed against the plaintiff E & W Building Material Co., Inc., for which execution may issue.