[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 715 
This is an appeal from a summary judgment in favor of the defendants, World Omni Leasing, Inc., and Toyota Alabama, Inc.,[1] against Jane Wilson. We affirm.
Ms. Wilson leased a Toyota pick-up truck from World Omni, through Toyota Alabama, in October 1986. The lease provided for a term of 60 months with payments of $296.88 per month plus $4.45 use tax for a total of $301.33 per month, and an option to purchase the truck at the termination of the lease for $3,716.00. In addition, the lease required Ms. Wilson to provide and pay for insurance coverage. After Ms. Wilson had made eight payments totaling $2,410.64, the truck was demolished in a two-vehicle collision. The insurance proceeds, which were paid to World Omni as a named insured on Ms. Wilson's insurance policy, were insufficient to cover the outstanding balance due, as calculated by World Omni, thereby leaving the amount of $4,067.23 as the remaining balance due.
Ms. Wilson filed suit against World Omni and Toyota Alabama for a claim based on Ala. Code 1975, § 5-19-16, which reads as follows:
 "With respect to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds the agreement or any provision of the agreement to have been unconscionable before, after or at the time it was made, the court may refuse to enforce the agreement, or it may enforce the remainder of the agreement without the unconscionable provision, or it may so limit the application of any unconscionable provision as to avoid any unconscionable result."
She contended that to require her to pay the balance due under the lease agreement as computed by World Omni, which included the estimated residual value of the truck even though she was not obligated to purchase the truck when the lease terminated, was oppressive, unreasonable, unconscionable, and against public policy; that the lease agreement should be declared void and unenforceable; and that World Omni extracted a finance charge in excess of that permitted by the Alabama Mini Code.
Both Ms. Wilson and World Omni filed motions for summary judgment. The trial court granted World Omni's motion and denied Ms. Wilson's. Wilson appeals from World Omni's summary judgment.
At this point, we should note that this action was commenced after June 11, 1987; therefore, the applicable standard of review is the substantial evidence rule. See Ala. Code 1975, § 12-21-12. However, as the following discussion will show, Ms. Wilson failed to offer even a scintilla of evidence in support of each element of her causes of action to rebut the defendants' prima facie showing that they were entitled to a judgment as a matter of law.
The dispositive issues before us are:
(1) Whether the lease agreement was unreasonable, unconscionable, and unenforceable; and
(2) Whether the charge to Ms. Wilson for the estimated residual value of the truck *Page 716 
was unreasonable, unconscionable, and unenforceable.
The leasing of consumer goods has become a widely used substitute for purchase. As a result, courts have held UCC § 2-302 applicable to leases either on the basis of statutory interpretation or by analogy. See 1 J. Fonesca, HandlingConsumer Credit Cases, § 4:7 (3d ed. 1986). We affirmatively established in Lloyd v. Service Corp. of Alabama, Inc.,453 So.2d 735 (Ala. 1984), that Ala. Code 1975, § 7-2-302, applies, by analogy, to lease agreements. Section 7-2-302, in pertinent part, reads as follows:
" § 7-2-302. Unconscionable contract or clause.
 "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."
Comment (1) of the official comments to § 7-2-302 sets out the basic test to determine unconscionability:
 "[W]hether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of the prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risks because of superior bargaining power."
The intention of this section is to allow the courts to pass directly on the unconscionability of the contract or the particular clause therein and to make a determination as to its unconscionability. Id. It is within the court's discretion to refuse to enforce the contract as a whole if it is permeated by unconscionability, or to strike any single clause or group of clauses that are so tainted or that are contrary to the essential purpose of the agreement, or to simply limit the unconscionable clause so as to avoid unconscionable results. Comment 2, Ala. Code 1975, § 7-2-302; 1 J. Fonesca, HandlingConsumer Credit Cases § 4:9 (3d ed. 1986).
With a choice between a valid and an invalid construction, the court has a duty to accept the construction that will uphold, rather than destroy, the validity of the contract.West Point-Pepperell, Inc. v. Bradshaw, 377 F. Supp. 154
(M.D.Ala. 1974).
 "It is fundamental, of course, that parties may contract as they see fit so long as they do not offend some rule of law or contravene public policy, and a court will not attempt to alter the expressed intentions of the parties if they are clear and unambiguous. Vardaman v. Benefit Association of Railway Employees, 263 Ala. 236, 82 So.2d 272 (1955)."
Advertiser Co. v. Electronic Engineers, 527 So.2d 1317
(Ala.Civ.App. 1988), at 1319.
In West Point-Pepperell, supra, the United States district court took the position that the question of unconscionability of a contract before the court was a matter of law; that an unconscionable bargain or contract was one that no man in his senses, not under delusion, would make on the one hand, and that no fair and honest man would accept on the other, Hume v.United States, 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889); that unconscionability includes an absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party. Williams v.Walker-Thomas Furniture Co., 121 U.S. App.D.C. 315,350 F.2d 445, 18 A.L.R.3d 1297 (D.C. Cir. 1965). The court in WestPoint-Pepperell, supra, citing Williams v. Walker-ThomasFurniture Co., supra, further stated:
 "The presence of a meaningful choice can only be determined by consideration of all the circumstances surrounding the transaction, and might be negated by 'gross inequality of bargaining power', it being relevant to ascertain whether 'each party * * * considering the obvious education or lack of it (had) a reasonable *Page 717 
opportunity to understand the terms of the contract or (whether) the important terms (were) hidden in a maze of fine print and minimized by deceptive sales and practices.' "
377 F. Supp. at 158.
Rescission of a contract for unconscionability is an extraordinary remedy usually reserved for the protection of the unsophisticated and the uneducated. E W Building Material Co.v. American Savings Loan Association of Brazoria County,Texas, 648 F. Supp. 289 (M.D.Ala. 1986). However, Alabama law provides no explicit standard of unconscionability and each case must be considered on its own facts. Id. In Lloyd v.Service Corp. of Alabama, Inc., supra, we held that it was the unequal bargaining power of the parties that gave rise to an unconscionable contract. Ms. Wilson contends that she was placed in an unequal bargaining position because she lacked experience in leasing or purchasing vehicles. However, in considering her educational background, her line of employment, and her past experience in commercial transactions, as revealed in her deposition testimony, we conclude that Ms. Wilson was not in an unequal bargaining position at the time the contract was made.
Ms. Wilson also contends that the lease agreement was unconscionable because she had no opportunity to read and understand the terms of the contract. In her deposition, however, she testified that she clearly understood that her agreement with World Omni defined the rights and duties of the parties; that in prior transactions she had read the contracts before signing them; and that in this case she did not review the contract although no one stopped her from reading it or told her she could not read it or misled her in any way. Furthermore, the record showed that Ms. Wilson signed the "Lease Acknowledgement Form," which in pertinent part reads as follows:
 "I acknowledge that if I turn this vehicle in before the end of my lease term, I will remain obligated under the provisions of the Vehicle Lease Agreement concerning Early Termination and Default, which could result in significant penalties and costs. I understand that this form does not change any provision in the Lease Agreement I am signing as well.
 "I CERTIFY THAT I HAVE READ AND THAT I UNDERSTAND EACH ITEM MENTIONED ABOVE." (Emphasis added.)
In Munroe v. Pritchett, 16 Ala. 785, 789 (1849), this Court stated: "If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, 'volenti non fit injuria.' "[2]
In an effort to discourage negligence and inattention to one's own interest, this Court in Torres v. State Farm Fire Casualty Co., 438 So.2d 757, 759 (Ala. 1983), held that the right of reliance comes with a duty on the part of plaintiffs to "exercise some measure of precaution to safeguard their interests."
We also noted in Century Plaza Co. v. Hibbett Sporting Goods,Inc., 382 So.2d 7 (Ala. 1986), that "it is true generally that where a party, having the ability to read and understand an instrument, fails to do so, and signs it without reading it, he cannot avoid the obligations embodied in the instrument by pleading ignorance of its contents." Id. at 8-9.
Furthermore, in Syx v. Midfield Volkswagen, Inc.,518 So.2d 94 (Ala. 1987), this Court, affirming the defendant's summary judgment, took the position that the plaintiff had made a conscious decision not to read the application or his policy; that the plaintiff simply did not exercise any degree of precaution to safeguard his interests; and, as a result, that the plaintiff could not recover. *Page 718 
In the instant case, Ms. Wilson had the opportunity to read the lease agreement, had the opportunity to exercise reasonable care, and had the opportunity to safeguard her interests. Because of her conscious decision not to take advantage of any of these opportunities, she cannot now complain that the lease agreement is unconscionable by pleading ignorance of its contents.
Included in the lease agreement at issue are the following pertinent provisions:
 "11. PURCHASE OPTION. Upon the normal scheduled termination of this lease you will have the option, but not the obligation, to purchase the Vehicle. . . . The price you will pay us will be $3,716.00 . . . . The parties agree that such sum represents the estimated Fair Market Value of the Vehicle at the scheduled termination of this lease. . . . ." (Emphasis added.)
This paragraph specifically stated that Ms. Wilson and World Omni agreed that the amount of $3,716.00 represented the estimated fair market value at the lease termination.
"16. EARLY TERMINATION AND DEFAULT.
 "(c)(i) Upon early termination, the amount you will owe us will be determined by adding (A) the amount of the future monthly Lease Payments for the remaining scheduled term of this Lease, . . . plus (B) the estimated fair market value of your vehicle at the normal scheduled termination date of this Lease, . . . and by then subtracting (A) Any unearned charges, using the Rule of 78's,[3] (B) the net proceeds [See 16(c)(ii)][4] from the sale of this vehicle. If there is a balance due by you to us after we make the above computation, you agree to pay it promptly." (Emphasis in lease agreement.)
This procedure, as set out in 16(c)(i), which properly determined Ms. Wilson's liability, was followed by World Omni when it computed the remaining balance due:
52 remaining payments of $296.88[5] $15,437.76 Residual value provided in lease 3,716.00 ------------ Total $19,153.76 Less: Unearned monthly lease payments calculated according to the Rule of 78's $ 3,836.70 Payment from insurance company for damage to vehicle 10,127.00 Vehicle sold for salvage 1,122.63 ----------- — 15,086.33 ----------- Remaining balance owed $ 4,067.43
Furthermore, when Ms. Wilson signed the "Lease Acknowledgement Form," supra, she acknowledged that, if she turned in the leased vehicle before the end of the lease term, she would remain obligated under the provisions of 16(c)(i), which could result in significant penalties and costs.
 "20. INSURANCE. World Omni Leasing, Inc. (WOLI) must be named as 'additional insured' and 'loss payee' on any insurance policy which you are required to obtain under this Lease. . . . We will credit you with the proceeds of any insurance which we receive for any loss which you have made good. . . . In the event of an occurrence which results in an insurance settlement which fails to liquidate the net outstanding balance of your lease agreement, you agree to pay the remaining balance due. Examples of such occurrences . . . losses due to collision . . . . You will remain liable to World Omni Leasing, Inc. for any unpaid balance of the lease regardless of the responsibility for the loss." (Emphasis added.)
Among the various charges made by Ms. Wilson to sustain her claim in this action was the charge that paragraph 20 of the agreement, providing that she was liable for the balance due under the lease even though the property was destroyed in an accident and the insurance proceeds *Page 719 
were insufficient to liquidate the balance, was not set out clearly and conspicuously in accordance with 15 U.S.C. § 1667a
(1982). Section 1667a, dealing with consumer lease disclosures, requires that the lessor give the lessee, prior to the consummation of the lease, a dated written statement on which the lessor and lessee are identified, setting out accurately, in a clear and conspicuous manner, consumer leasing disclosures. From the record before us, we find nothing to give credible support to Ms. Wilson's charge that paragraph 20 is unconscionable because it was not set out in accordance with § 1667a. Even if we concluded that paragraph 20 was indeed unconscionable, it would be within our discretion to enforce the remainder of the contract without the unconscionable clause. See Ala. Code 1975, §§ 5-19-16, 7-2-302. Even if we disregard this paragraph, Ms. Wilson's liability in accordance with 16(c)(i) would in no way be affected. The only difference would be that the remaining balance owed would have to be computed without giving credit for the insurance proceeds. As a result, the amount Ms. Wilson would owe World Omni would be $14,194.43.
Ms. Wilson further contends that the provisions of the lease agreement, concerning the residual value as part of her liability at the lease termination, violated 15 U.S.C. § 1667b(a) (1982). Section 1667b(a) reads as follows:
 "(a) Where the lessee's liability on expiration of a consumer lease is based on the estimated residual value of the property such estimated residual value shall be a reasonable approximation of the anticipated actual fair market value of the property on lease expiration. There shall be a rebuttable presumption that the estimated residual value is unreasonable to the extent that the estimated residual value exceeds the actual residual value by more than three times the average payment allocable to a monthly period under the lease. In addition, where the lessee has such liability on expiration of a consumer lease there shall be a rebuttable presumption that the lessor's estimated residual value is not in good faith to the extent that the estimated residual value exceeds the actual residual value by more than three times the average payment allocable to a monthly period under the lease. . . . The presumptions stated in this section shall not apply to the extent the excess of estimated over actual residual value is due to physical damage to the property beyond reasonable wear and use, or to excessive use. . . ." (Emphasis added.)
In the present case, three times the average payment would be the sum of $890.64.[6] It is true that the estimated residual value ($3,716.00) exceeds the actual residual value (scrap value of $1,122.63) by $2,593.37, which is more than three times the average payment ($890.64). However, the above-quoted statute expressly provides that the presumptions stated in that statute shall not apply to the extent that the excess of estimated over actual residual value is due to physical damage to the property beyond reasonable wear and use. Therefore, the presumptions of the reasonableness of the residual value are inapplicable in the instant case, because the truck Ms. Wilson leased suffered extensive "physical damage beyond reasonable wear and use." Consequently, the charge to Ms. Wilson of $3,716.00 does not violate § 1667b(a).
For the foregoing reasons, we find that the lease agreement between Ms. Wilson and World Omni was not unconscionable, nor was the charge to Ms. Wilson for the estimated residual value of the truck unconscionable.
The trial court did not err in granting summary judgment to World Omni and Toyota Alabama.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.
[1] Toyota Alabama, Inc., was designated as the lessor for purposes of the Federal Consumer Leasing Act.
[2] "The maxim 'volenti non fit injuria' means that if one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in doing so, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom." Black's Law Dictionary, 1412 (5th ed. 1979).
[3] See Ala. Code 1975, § 5-19-4(c).
[4] "(c)(ii) If the vehicle is not purchased by you, we will sell it at wholesale in a commercially reasonable manner."
In the instant case, there is no vehicle to sell.
[5] The $4.45 use tax is not figured in this computation.
[6] The $4.45 use tax is not figured in this computation. *Page 720