**Mary Lee SANKEY, Plaintiff,**

v.

**SEARS, ROEBUCK AND COMPANY, et al., Defendants.**

**No. CIV.A. 00–A–455–N.**

United States District Court, M.D. Alabama, Northern Division.

June 8, 2000.

Donald P. McKenna, Kenneth E. Riley, Birmingham, AL, for plaintiff.

Michael R. Pennington, F. Wendell Allen, Birmingham, AL, for defendant.

### MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This cause is before the court on Defendant Sears, Roebuck and Company's ("Sears") Motion to Compel (Doc. #4) filed on April 13, 2000.

This case was originally filed by the Plaintiff Mary Lee Sankey ("Sankey") in the Circuit Court of Montgomery, Alabama on February 16, 2000. Sears filed a Notice of Removal on April 13, 2000, alleging jurisdiction pursuant to 28 U.S.C. § 1332. Sankey is a citizen of Alabama and Sears is a corporation incorporated under the laws of New York, with its principal place of business in Illinois. Damages of more than $75,000 have been alleged.

Sears contends that the only avenue available to Sankey for resolution regarding charges placed on her Sears Credit Card is binding arbitration and has therefore filed this Motion to Compel. For the reasons to be discussed, Sears' Motion to Compel is due to be granted in part and denied in part.

## II. FACTS

Sankey executed a contract with Sears entitled Pest Control Customer Agreement ("the Agreement") with an effective date of August 24, 1995. In the Agreement, Sears agreed to treat Sankey's home for ants, roaches, spiders, crickets, silverfish, and palmetto bugs for one year for the sum of $380. The Agreement allowed for three consecutive, one year renewals of the pest control plan at a rate of $380 per year. The Agreement also contained an arbitration clause that stated:

> The purchaser and All American Termite & Pest Control, Inc. dba/Sears Authorized Termite & Pest Control agree that any controversy or claim between them arising out of or relating to the interpretation, performance or breach of any provision of this agreement shall be settled exclusively by arbitration. This contract/agreement is subject to arbitration pursuant to the Uniform Arbitration Act of the American Arbitration Association. The arbitration award may be entered in any court having jurisdiction. In no event shall either party be liable to the other for indirect, special or consequential damages or loss of anticipated profits.

See Def. Exh. A. In 1998, Sankey entered into a Subterranean Termite Control Residential Customer Agreement ("Termite Agreement") with Sears. See Def. Exh. B. The Termite Agreement also contained an arbitration clause:

> The Customer and Sears agree that any and all claims or disputes arising out of, in connection with, or in relation to the interpretation, performance or breach of any provisions of this Agreement shall be resolved, on an individual basis, by final and binding arbitration ... This arbitration provision does [sic] to apply to any claim or dispute relating to the financing of or payment for this Agreement, any claim or dispute relating to any security interest in goods or services or any agreement or disclosure relating to any financing, payment or security interest.

See id. ¶ 11.[1]

Sankey applied for a Sears Credit Card allegedly because a Sears representative suggested that this was how Sears "pre-

---

1. It appears that Sears does not contend that this Termite Agreement arbitration clause is applicable to the present dispute. Sears states that "all claims alleged by plaintiff arise from the terms of and performance under the first Agreement between the parties." See Def. Br. ¶ 3.

ferred" to be paid under the pest control Agreement. *See* Complaint ¶ 3. In August of 1996, 1997, and 1998, Sears charged Sankey's Sears Credit Card $380 for pest control treatments. In April of 1999, Sears placed a $200 charge for termite and pest control services on Sankey's Sears Credit Card.

In addition to pest control and termite payments, Sears also made other charges to Sankey's Sears Credit Cart. In September of 1996, Sears charged Sankey $39 for "Loss/Stolen Card Service." In October of 1997, Sears charged $49.95 for Sears' "Discount Travel Club." Then in December of 1998, Sears charged Sankey $54.95 for Sears' "Discount Travel Club." On at least six occasions Sears also charged Sankey for Sears' "Credit Protection Plan."[2] Finally, Sears charged Sankey $200 in late payment fees.

In her Complaint, Sankey asserts that none of these charges were authorized by her. She alleges three counts against Sears and a fourth count against fictitious defendants. Count I is a claim for fraud. *See* Complaint ¶¶ 14–19. Count II is a claim for breach of contract. *See id.* ¶¶ 20–23. Finally, Count III is a claim for negligence or wantonness. *See id.* ¶¶ 24–27. In Counts I and III, Sankey seeks compensatory and punitive damages not to exceed $74,999, and in Count II she seeks compensatory damages not to exceed $74,999. *See id.* Wherefore clauses.

### III. *DISCUSSION*

In order to determine whether Sankey must arbitrate her claim, the court must determine whether her claims are arbitrable and, if they are, whether the arbitration clause is valid.

#### A. *Arbitrability*

The Federal Arbitration Act ("FAA" or "the Act"), governs arbitration in this case. *See* 9 U.S.C. §§ 1–16. Pursuant to § 2 of

the FAA, a written arbitration "provision in any ... contract evidencing a transaction involving commerce ... [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms, the Act requires district courts to direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The purpose of the Act was to ensure judicial enforcement of privately-negotiated arbitration agreements. *See id.* at 219, 105 S.Ct. 1238. The Act places an arbitration agreement "upon the same footing as other contracts." H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924).

There is no dispute between the parties that the transactions in question involved interstate commerce. Thus, the FAA governs this dispute. Sears implicitly invokes sections 3 and 4 of the FAA in its Motion to Compel arguing that Sankey must arbitrate her claims against Sears and the court must stay the proceedings.

Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed." 9 U.S.C. § 4. When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

Section 3 of the FAA governs stays of court proceedings where the issues to be litigated are referable to arbitration. This section requires a federal court, upon being satisfied that an issue before it is properly arbitrable, and upon application of one of the parties, to stay the trial of the action "until such arbitration has been had

**2.** Sears charged Sankey in 1999 for the "Credit Protection Plan" as follows: January,

$9.68; February, $10.12; March $10.54; April, $11.95; May, $12.21; June, $12.69.

in accordance with the terms of the agreement." 9 U.S.C. § 3.

According to Sears, Sankey's claims in her Complaint arise out of her purchase from Sears of termite and pest control services under the Agreement and, thus, fall under the arbitration clause found in the Agreement. *See* Motion to Compel ¶¶ 1–3 & Def. Reply Br. at 1. To support its argument that Sankey's claims "relate to" or "arise out of" the Agreement implicating the arbitration clause, Sears relies on the language of several allegations in Sankey's Complaint. First, Sears notes that Sankey stated "a Sears representative induced Ms. Sankey to apply for a Sears Credit Card to pay for her pest control . . . ." Def. Reply Br. at 2 (citing Complaint ¶ 3). Further, Sears notes that Sankey alleged that Sears "negligently or wantonly breached its duty to disclose to plaintiff all terms and conditions of the contracts between plaintiff and defendant." *See id.* at 3 (citing Complaint ¶ 15). Moreover, Sears asserts that several charges Sankey is challenging were made on her Sears Credit Card for continuing termite and pest control services under the Agreement and Termite Agreement. *See id.* Finally, Sears argues that if there is any doubt that Sankey's claims are within the scope of the arbitration provision of the Agreement that doubt must be resolved in favor of arbitration. *See id.* at 4 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) & *Premiere Chevrolet, Inc. v. Headrick*, 748 So.2d 891, 895–96 (Ala.1999)).[3]

Sankey argues that the scope of the arbitration clause in the Agreement does not encompass her claims alleged in her Complaint. *See* Pl. Br. at 1. Relying on *American Express Financial Advisors, Inc. v. Makarewicz*, 122 F.3d 936 (11th Cir.1997), Sankey contends that "the FAA does not require parties to arbitrate when they have not agreed to do so . . . ." *See id.* at 2. Sankey alleges that the principles of state contract law determine whether an arbitration agreement applies to a dispute. *See id.* at 3 (citing *Chazen v. Parton*, 739 So.2d 1104, 1107 (Ala.1999); *Capital Inv. Group, Inc. v. Woodson*, 694 So.2d 1268, 1270 (Ala.1997); *Koullas v. Ramsey*, 683 So.2d 415, 417 (Ala.1996)). With these principles in mind, Sankey argues that the Agreement did not contemplate the arbitration of every claim Sankey might ever have against Sears, and, thus, Sankey cannot be forced to arbitrate her claims relating to her Sears Credit Card. According to Sankey, her claims "do not require the court to interpret any provision of the [Agreement], nor do they attack any provision of that contract." *See id.* at 4.

In argument, Sankey also cites the court to the case of *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243 (5th Cir.1998). *See* Pl. Br. at 5. In *Ford*, the Fifth Circuit found that a doctor's false advertising against an HMO was not considered to be "related to" a contract between the doctor and the HMO. *See Ford*, 141 F.3d at 245. The court went on to note that a tort claim is "related to" an agreement only if reference to the agreement is required to maintain the action and therefore a claim does not necessarily

---

3. Sears cites the court to the case of *Thompson Tractor Co., Inc. v. Fair Contracting Co., Inc.*, 757 So.2d 396 (Ala. 2000), as an analogous case to the present facts. *See* Def. Reply Br. at 6. This case, however, has not yet been released for publication and is, therefore, not precedential. Even if this case were precedential, it is distinguishable from the present facts. In *Thompson*, the language of the arbitration clause was broad, covering "all disputes, controversies and claims of any kind

and character whatsoever . . . arising out of or related to this Lease, the Equipment, the transactions evidenced or contemplated by this Lease, any prior negotiations or dealings between Lessee and Lessor, or any maintenance or service performed by Lessor on the Equipment or on any other related or unrelated property before, on, or after the date of this Lease . . . ." *See Thompson*, 757 So.2d at 398. The arbitration clause in the present case is much narrower in scope.

"relate to" a contract just because the claim implicated the agreement as a factual matter. *See id.* at 250 n. 7. Sankey alleges that in the present case, the Agreement is "merely a piece of background information" to her claim against Sears. *See* Pl. Br. at 5. Thus, Sankey argues that the arbitration clause in the Agreement does not mean Sankey is forced to arbitrate her claims concerning charges to her Sears Credit Card.[4]

■ The court notes that "[d]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses Cone,* 460 U.S. at 24–25, 103 S.Ct. 927; *see also United Steelworkers of Am. v. Warrior and Gulf Nav. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("An order to arbitrate ... should not be denied unless it may be said with positive assurance that the Arbitration Clause is not susceptible of an interpretation that covers the asserted dispute."). However, arbitration is still a matter of contract interpretation, and a party cannot be required to submit to arbitration any dispute absent an agreement to do so. *See AT & T Technologies, Inc. v. Communica-* *tions Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In the present case, the language of the arbitration clause in the Agreement is specific as to what it covers—it covers "any controversy or claim between [Sankey and Sears] arising out of or relating to the *interpretation, performance or breach of any provision*" of the Agreement. *See* Def. Exh. A (emphasis added).[5]

■ ■Some of the charges that Sankey is challenging in her Complaint relate to an interpretation of a clause in the Agreement. Specifically, the allegations concerning revolving charges for pest control implicate an interpretation of the Agreement. The Agreement states,

> This customer agreement can be renewed for three successive years at the rate of $380.00/year. Thereafter the renewal fee may be revised upon notice to the customer in advance of treatment.

> Renewal Month–Year 7/96 Amount $380.00 Renewal Month–Year 7/97 Amount $380.00 Renewal Month–Year 7/98 Amount $380.00

METHOD OF PAYMENT: _____ CASH _____ CHECK   X   SEARS CHARGE # 0581158351154

_____ DISCOVER CARD # _____

*See* Def. Exh. A. The court finds that the validity of additional charges to Sankey's credit card for the renewal months relates to an interpretation of this contract clause or arises out of the performance of this provision. It is unclear which party, Sears or Sankey or both, can renew the Agreement for successive years. Consequently, the court finds that Sears' Motion to Com- pel with respect to the charges for $380 in 1996, 1997 and 1998 is due to be granted.

■ The other charges, however, that Sankey alleges Sears added to her Sears Credit Card do not relate to the interpretation, performance or breach of any provision in the Agreement. First, the charge allegedly made in April of 1999 for $200 for termite treatments relates to the Termite Agreement, which specifically ex-

4. The court notes that *Ford* is distinguishable from the present case. In the present case, certain charges to Sankey's Sears Credit Card do more than just implicate the Agreement as a factual matter. *See* discussion *infra.*

5. This arbitration clause is unlike many broad arbitration clauses that simply apply to any controversy or claim arising out of or relating to the contract. *See, e.g., Green Tree Fin. Corp. of Ala. v. Wampler,* 749 So.2d 409 (Ala.1999). The arbitration clause in the Agreement is limited to the "interpretation, performance or breach of any provision." The limiting language suggests that not all controversies were to be considered arbitrable.

cludes payment disputes from its arbitration clause. No reasonable interpretation of the Agreement would apply its arbitration clause to a dispute over a charge made in 1999 for termite control services covered under a separate agreement with a separate arbitration clause which excluded such a dispute. Second, simply because Sankey acquired the Sears Credit Card when she entered into the Agreement does not mean that her claims concerning charges for "Loss/Stolen Card Service," "Discount Travel Club," or "Credit Protection Plan" relate to an interpretation, performance or breach of any provision in the Agreement. To be covered by the arbitration clause it is not sufficient that the controversy over these charges may relate to the Agreement; it explicitly must relate to "the interpretation, performance or breach of [a] provision of [the] agreement." These charges have no connection to any provision of the Agreement, under any reasonable interpretation. Accordingly, Sears' Motion to Compel is due to be denied with respect to these charges.

### B. Validity

Because the court finds that Sankey's claims with respect to some of the charges are due to be arbitrated, the court must consider Sankey's argument that the arbitration clause is unconscionable.[6] *See* Pl. Br. at 7.

The FAA does not require the enforcement of an arbitration provision where it is invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has interpreted this statement to "give[ ]

States [ ] method[s] for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision," under both contract principles and equity. *Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

Sankey argues that the arbitration clause in the Agreement is unconscionable, and therefore unenforceable, for several reasons. First, Sankey argues that the Uniform Arbitration Act referred to in the Agreement is not "of the American Arbitration Association" ("AAA"), as the Agreement states, but rather is a product of the National Conference of Commissioners on Uniform State Laws. *See* Pl. Br. at 7. Thus, Sankey argues that the arbitration clause is ineffective because it is "nonsense." *See id.* Next, Sankey claims that the arbitration clause in the Agreement is unconscionable as a matter of law because it does not "spell out cost and expenses." *See id.* at 8 (citing to *Randolph v. Green Tree Fin. Corp.,* 178 F.3d 1149, 1157–58 (11th Cir.1999), *cert. granted,* 120 S.Ct. 1552 (April 3, 2000) (No. 99–1235)). Finally, Sankey alleges that the clause is unconscionable because it is part of a contract of adhesion. *See id.* at 12.

Judge Thompson addressed the issue of unconscionability of an arbitration clause in detail in *Roberson v. Money Tree of Alabama, Inc.,* 954 F.Supp. 1519, 1524 n. 7 (M.D.Ala.1997) (Thompson, J.). Judge Thompson noted that arbitration clauses should be treated like a contract, and thus state law applied to the determination of their validity. *See Roberson,* 954 F.Supp.

---

6. Sankey "requests the opportunity for discovery and an evidentiary hearing on the issue of unconscionability *IF* the trial court rejects all the other defenses to mandatory arbitration," Pl. Br. at 7, or Sankey requests "additional discovery and hearing include [sic] hearings and findings on the related issue of waiver of jury trial." *Id.* at 10. The court denies Sankey's request for additional discovery or a hearing, at this time. Arbitration proceedings are meant to be summary in nature and normally involve little discovery.

*See Booth v. Hume Publ'g, Inc.,* 902 F.2d 925, 932 (11th Cir.1990) (noting "[t]he purpose of the Federal Arbitration Act was to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation.") (quoting *O.R. Securities, Inc. v. Prof'l Planning Assocs., Inc.,* 857 F.2d 742, 745–46 (11th Cir.1988)). By allowing additional discovery presently, the court would be thwarting the purpose of the FAA.

at 1524. Alabama law does not have an explicit standard for determining the unconscionability of a contract, however, leaving this area of law somewhat hazy. *See id.* at 1524 n. 7. Alabama courts apply the following four factors to determine whether a contract or contract provision is unconscionable: (1) whether there is an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract. *See Layne v. Garner*, 612 So.2d 404, 408 (Ala.1992) (citations omitted). An unconscionable contract has also been defined in Alabama as one "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Layne*, 612 So.2d at 408 (citation omitted). Finally, when contemplating the unconscionability of a contract, a court must keep in mind that the recission of a portion of a contract "is an extraordinary remedy usually reserved for the protection of the unsophisticated and uneducated." *Marshall v. Mercury Fin. Co.*, 550 So.2d 1026, 1028 (Ala.Civ.App.1989) (citation omitted).

According to *Roberson*, with which this court agrees, in determining whether the arbitration clause was unconscionable, the ultimate question the court must answer, "is whether the arbitration clause is so unfavorable to [Sankey] that it simply would not have been reasonable for [her] knowingly to accept it, given any meaningful choice," *Roberson*, 954 F.Supp. at 1525, and whether she "cannot obtain through arbitration the very same relief that would be otherwise available in a court action." *Id.* at 1526.

Keeping these "unconscionability" standards in mind, the court will address each of Sankey's arguments concerning the arbitration clause.

### 1. AAA

The arbitration clause states that arbitration is "pursuant to the Uniform Arbitration Act of the American Arbitration Association." Sankey points out that the American Arbitration Association ("AAA") did not promulgate the Uniform Arbitration Act ("Uniform Act") and therefore, the arbitration clause is nonsense. In fact, the Uniform Act was adopted by the Conference of Commissioners on Uniform State Laws in 1955 and approved by the American Bar Association, and is not a product of the AAA. This mistake, however, is not fatal to the arbitration clause.

The Eleventh Circuit has recently found that when "the chosen [arbitration] forum is unavailable ... or has failed for some reason, § 5 [of the FAA] applies and a substitute arbitrator may be named." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir.2000) (citation omitted). In *Brown*, the arbitration clause called for "binding arbitration under the Code of Procedure of the National Arbitration Forum ...." *See Brown*, 211 F.3d 1217, 1220. The National Arbitration Forum, however, dissolved prior to the dispute between the parties. *See id.* at 1222. Although in *Brown*, the arbitration forum was dissolved and not mistakenly identified as it is in the present case, the logic that *Brown* follows is still applicable. The Eleventh Circuit went on to say, "Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration." *See id.* (citation omitted). In the present case, there is no evidence that the choice of the "Uniform Arbitration Act of the American Arbitration Association" was an integral part of the agreement to arbitrate.[7] Consequently, the fact that the arbitration forum is unavailable does not mean that the arbitration clause is invalid.

---

7. In fact, if it were an integral part of the arbitration clause, it would have been more likely that the parties would have properly identified the arbitration forum.

The court will invoke § 5 of the FAA and will give the parties until July 7, 2000 to jointly agree on an arbitrator, who will resolve the arbitrable disputes in the manner provided by the Uniform Arbitration Act. If the parties fail to agree, they shall notify the court and the court will appoint an arbitrator.

### 2. Costs and Expenses

■ Sankey relies on the *Randolph* case, 178 F.3d 1149 (11th Cir.1999), to support her argument that because the arbitration clause does not mention fees and costs the arbitration clause is unconscionable as a matter of law. *Randolph*, however, is distinguishable from the present case because it addressed the issue of the enforceability of an arbitration clause when a statutory right was in question. *See Randolph*, 178 F.3d at 1158 (Randolph argues that the arbitration clause prevented her from "vindicating specific statutory rights under" the Truth in Lending Act). In *Randolph*, the Eleventh Circuit found that an arbitration clause that "says nothing about the payment of filing fees or the apportionment of the costs of arbitration" was unenforceable because it did not prevent a consumer from being saddled with fees and costs in excess of any award. *See id.* at 1158. The *Randolph* court discusses other cases where courts found high arbitration costs not unconscionable, but distinguished itself from these by pointing out that a specific statutory right was being prevented from being vindicated and by pointing out that no rules for the arbitration were set out in the arbitration clause. *See id.* at 1159.

The present case is quite different from *Randolph*. In the present case, statutory rights are not being implicated. Sankey is bringing state law claims of fraud, breach of contract and negligence or wantonness. *See* Complaint. When finding arbitration clauses unenforceable the Eleventh Circuit has focused on the fact that statutory rights were involved: "When an arbitration clause has provisions that defeat the remedial purpose of [a] statute, ... the arbitration clause is not enforceable." *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998) (citation omitted). In the present case, there is no remedial purpose that is put into jeopardy by compelling Sankey to arbitrate her claims. Accordingly, the court does not find *Randolph* persuasive that the present arbitration clause is unenforceable.

Because the court has determined that the parties will be given an opportunity to jointly select an arbitrator, the court is less concerned that cost and fees are not defined. The parties, during their selection process, will have the ability to determine the costs, fees and expenses, by negotiating these with the arbitrator they select. Thus, in this case, the court does not find the lack of a specific provision detailing these expenses fatal to the arbitration clause.

### 3. Adhesion Contract

■ Courts have expressly rejected the argument that an arbitration clause is automatically invalid if contained in a contract of adhesion. *See, e.g., Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154–55 (5th Cir.1992) ("Adhesion contracts are not automatically void. Instead, the party seeking to avoid the contract generally must show that it is unconscionable."). The Alabama Supreme Court has found that unjust and unreasonable contracts of adhesion, however, might be grounds not to enforce an arbitration clause under the FAA. *See Ex Parte Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 So.2d 1, 4 (Ala.1986). The court does not find the arbitration clause in this case to be unjust or unreasonable. Accordingly, the court does not find this argument persuasive.

Ultimately, the court concludes that Sankey undoubtedly had weaker bargaining power and probably had little choice in the inclusion of the arbitration clause in the Agreement. However, the arbitration clause in the Agreement is limited in scope

and does not appear oppressive, one-sided, or patently unfair. This arbitration clause is not so unfavorable to Sankey that it would have been unreasonable for her to accept it if she had had the choice. Finally, although, the arbitration clause limits her ability to bring a suit in court, Sankey has not demonstrated that enforcement of the arbitration clause will strip her of a remedy that would be available to her through the adjudication of her claims in federal court. Taking these factors into consideration, the court cannot conclude that the arbitration clause at issue in this case is unconscionable.

## IV. *CONCLUSION*

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT & T Technologies,* 475 U.S. at 648, 106 S.Ct. 1415. Thus, despite the inefficiencies created by this arbitration clause, Sankey can only be required to arbitrate the charges on her Sears Credit Card that are covered by the arbitration clause in the Agreement. Therefore, it is hereby ORDERED as follows:

1. Sears' Motion to Compel is GRANTED with respect to the allegations in Counts I through III of the Complaint for the three charges placed on Sankey's Sears Credit Card for $380 each for continuing services under the Agreement.

2. Sears' Motion to Compel is DENIED with respect to the allegations in Counts I through III of the Complaint for all other charges placed on Sankey's Sears Credit Card.

3. The parties will be given until **July 7, 2000** to jointly agree on an arbitrator. If the parties cannot reach an agreement on an arbitrator by that date, a party may petition the court and the court will name an arbitrator.

4. After the parties have selected an arbitrator, the parties are DIRECTED to proceed with arbitration in the manner provided by the Uniform Arbitration Act for all claims concerning the charges of $380 on Sankey's Sears Credit Card in 1996, 1997 and 1998.

5. Pursuant to 9 U.S.C. § 3, the court STAYS all proceedings on the claims arising out of the charges of $380 on Sankey's Sears Credit Card in 1996, 1997, and 1998, pending the outcome of arbitration.

6. This case will proceed on the claims arising out of all other charges on Sankey's Sears Credit Card.

7. Sears is DIRECTED to file an Answer to the Complaint by June 19, 2000.