One issue is presented in these consolidated appeals: Can a guarantor, who has paid part of the guaranteed debt, enforce contribution against his coguarantors without having paid the entire indebtedness, given that the guaranty agreement contained the following provision:
 "5. The undersigned [the guarantors] will not exercise or enforce any right of contribution, reimbursement, resource, or subrogation available to the undersigned against any person liable to payment of the indebtedness, or as to any collateral security therefore, unless and until all of the indebtedness shall have been fully paid and discharged."
(Supplemental Record, Vol. B, at 7; R. at 42; emphasis supplied.)
We conclude that Section 5 of the guaranty agreement prohibited the guarantor, Robert M. Garner, from suing the coguarantors, Delbert W. Layne and Charlotte Layne, until the entire indebtedness guaranteed by the agreement was paid; therefore, we hold that Garner's lawsuit was premature and that the trial court erred in entering a judgment for Garner against the Laynes. We emphasize, however, that Garner's lawsuit was premature. Garner may sue the Laynes at a later time, when the entire debt has been paid and discharged.
In the summer of 1988, Delbert Layne, Charlotte Layne (Delbert's wife), Michael Moses, Patricia Moses (Michael's wife), and Robert Garner formed LGM Fun Enterprises, Inc. ("LGM"), to develop, build, and operate a miniature golf course in Perdido Key, Florida. The Laynes became 1/3 shareholders in LGM; the Moseses became 1/3 shareholders; and Garner became a 1/3 shareholder.
To finance the miniature golf course, LGM borrowed $280,000 from Peoples Federal Savings Bank ("the Bank") in Fort Walton Beach, Florida. The Bank took a mortgage on the miniature golf course site to secure the loan. As additional security, the Bank required all the corporate shareholders to sign a personal guaranty agreement; the Bank also held a $125,000 certificate of deposit owned by Garner.
Sometime in 1989, LGM experienced financial difficulties. Garner lent the corporation money to make the payments on the bank loan and to fund the day-to-day operation of the golf course. In early 1990, LGM defaulted on the bank loan and the Bank applied the balance of Garner's certificate of deposit toward the debt.
Anticipating the corporation's default and the Bank's application of his certificate of deposit toward the debt, Garner sued the Laynes, seeking contribution from them of their pro rata share of the debt. Just days after filing suit and perfecting service on *Page 406 
the Laynes, Garner moved the trial court for a partial summary judgment based on § 8-3-42, Ala. Code 1975.[1] The Laynes objected on the basis that the motion was premature; apparently, the trial court never ruled on Garner's motion.
Soon thereafter, the Laynes answered the complaint and filed a counterclaim against Garner and a third-party complaint against the Moseses.[2] The answer set forth a general denial of liability and various affirmative defenses; the counterclaim and third-party complaint alleged various ultra vires acts by Garner and the Moseses, as well as waste of corporate assets, mismanagement of the corporation, and a conspiracy to deprive the Laynes of the value of their corporate stock. The counterclaim and third-party complaint also asked for an equitable accounting, and generally invoked the trial court's equitable jurisdiction, and alleged that Garner had withdrawn money from the corporate account without permission.
The case was tried without a jury. After hearing ore tenus evidence, the trial court entered an order awarding Garner $62,848.85 against the Laynes. The Laynes moved for a new trial, or in the alternative, to alter, amend, or vacate the order. After the trial court failed to rule on that motion within 90 days, both Garner and the Laynes appealed, apparently thinking the motion had been denied by operation of Rule 59.1, Ala.R.Civ.P. Determining that the order appealed from was not final, see Rule 54(b), Ala.R.Civ.P., this Court remanded the case to the trial court for disposition of the Laynes' counterclaim and third-party complaint. On remand, the trial court entered a final judgment for Garner against the Laynes for $62,848.85, and denied the Laynes' counterclaim and third-party complaint. Garner and the Laynes appealed.
The Laynes argue (1) that the trial court erred, as a matter of law, in entering the judgment against them for contribution on the corporate debt when the guaranty agreement prohibits a suit for contribution until all of the debt is "fully paid and discharged" and (2) that the law of contribution among cosureties requires complete satisfaction of the debt by one party before that party can seek contribution from his cosureties. We agree with the Laynes that Garner's suit was premature, based on the express terms of the guaranty agreement. Therefore, we are constrained to reverse the judgment and remand the cause to the trial court with instructions to dismiss the suit. However, we disagree with the Laynes' argument that Alabama law requires that the entire debt be paid before *Page 407 
contribution among cosureties could be required.[3]
On several occasions this Court has stated that "[i]t is generally recognized that the rules governing the interpretation and construction of contracts are applicable in resolving a question as to the interpretation or construction of a guaranty contract." Pate v. Merchants Nat'l Bank ofMobile, 428 So.2d 37, 39 (Ala. 1983); see ColonialBank of Alabama v. Coker, 482 So.2d 286, 291 (Ala. 1985);Dill v. Blakeney, 568 So.2d 774, 777 (Ala. 1990); andMoody v. Hinton and Hinton Properties, Inc.,603 So.2d 912 (Ala. 1992). Thus, "when the terms of a [guaranty agreement] are unambiguous, the construction of the contract and its legal effect become questions of law for the court."Dill, 568 So.2d at 777. Further, "[w]hether a [guaranty agreement] is ambiguous is a question of law for the court." Id. at 778.
Section 5 of the guaranty agreement is clear and unambiguous. It states, in clear and simple terms, that no cosurety or coguarantor can "exercise . . . any right of contribution against . . . any person liable" on the debt "unless and until" the indebtedness has been "fully paid." The obvious import of section 5 is that a coguarantor or cosurety cannot seek contribution against other coguarantors or cosureties unless the entire debt has been paid.
This contractual prerequisite to suit was raised in the Laynes' answer; during the actual trial of this case; in the Laynes' motion to alter, amend, or vacate the order awarding Garner $62,848.85; and, of course, in this Court on appeal. Garner argues in response that Section 5 was intended to benefit only the Bank, that it was not bargained for by the parties, and that it would be unconscionable to enforce the provision among co-guarantors. We disagree.
The clear language of Section 5 states that the coguarantors will not enforce any right of contribution against "any person liable to payment of the indebtedness" before full payment has been made. (Supplemental Record, Vol. B, at 7; R. at 42.) The Laynes fall within the plain meaning of this phrase. Thus, Garner's argument that the guaranty agreement should only benefit the Bank is unfounded, based on the unambiguous language of the guaranty agreement itself.
Garner also argues that Section 5 was not a bargained-for part of the guaranty agreement. The record does contain testimony from Garner and Michael Moses to buttress this claim, but this Court has stated:
 "One who executes a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation, absent fraud and misrepresentation. With regard to guaranty agreements, this Court has stated that the guarantor's claimed ignorance of the contents of a written guaranty in no way avoids his obligation thereunder, in the absence of fraud or misrepresentation."
Williams v. Bank of Oxford, 523 So.2d 367, 368 (Ala. 1988) (citations omitted); and see, Waldrep v. Nosrat,426 So.2d 822 (Ala. 1983). Garner has not claimed fraud or misrepresentation here. Thus, he is bound by the clear terms of the guaranty agreement.
Further, Garner argues that Section 5 is unconscionable, and, therefore, that it *Page 408 
should be rescinded or that this Court should refuse to enforce it. Initially, we note that Garner failed to make this argument at the trial level; nevertheless, we will address it.
While it is true that a court may rescind a contract, or a portion of a contract, for unconscionability, "[r]escission of a contract for unconscionability is an extraordinary remedy usually reserved for the protection of the unsophisticated and uneducated." Marshall v. Mercury Finance Co.,550 So.2d 1026, 1028 (Ala.Civ.App. 1989), quoting E WBuilding Material Co. v. American Savings Loan Ass'n,648 F. Supp. 289, 291 (M.D.Ala. 1986); and see Wilson v.World Omni Leasing, Inc., 540 So.2d 713 (Ala. 1989).
An unconscionable contract or contractual provision is defined as a contract or provision "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Lloyd v.Service Corp. of Alabama, 453 So.2d 735, 739 (Ala. 1984),quoting Hume v. United States, 132 U.S. 406, 410,10 S.Ct. 134, 136, 33 L.Ed. 393 (1889). Although Alabama law lacks an explicit standard for determining whether a contract or contractual provision is unconscionable, case law reveals that four factors are important in making this determination.
In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract. See, Advertiser Co.v. Electronic Engineers, 527 So.2d 1317 (Ala.Civ.App. 1988); Crestline Center v. Hinton, 567 So.2d 393
(Ala.Civ.App. 1990); Lloyd v. Service Corp.,453 So.2d 735, 739; and Wilson v. World Omni Leasing, Inc.,540 So.2d 713, 717.
The record indicates that Garner was a sophisticated businessman with experience in the cable television franchise area and with knowledge of business finance and management. Further, the record does not indicate that when he executed the guaranty agreement Garner lacked meaningful choice or that he had unequal bargaining power. Nor can we say that Section 5 is unreasonably favorable to one party or that it is one-sided, oppressive, or patently unfair. In short, Section 5 is not unconscionable.
On his cross-appeal, Garner argues that the trial court incorrectly computed the amount of corporate debt that he had paid, and, thus, incorrectly computed the amount of contribution owed by the Laynes. In light of our holding that Garner's lawsuit was premature and that the trial court therefore erred in entering the judgment, we pretermit discussion of the trial court's computation.
We note that in their briefs to this Court the Laynes have not addressed the trial court's denial of their counterclaim and third-party complaint. The Laynes have, therefore, waived their right to challenge the trial court's judgment on these claims.
Based on the foregoing, the judgment entered in favor of Garner against the Laynes is reversed, and the cause is remanded to the trial court with instructions to dismiss the claim for contribution. Again, we emphasize that Garner is free to sue the Laynes under the express terms of the guaranty agreement when the debt has been fully paid and discharged. The judgments entered in favor of Garner against the Laynes on their counterclaim and the judgment entered in favor of the Moseses against the Laynes on their third-party complaint are affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Section 8-3-42 reads as follows:
"Sureties entitled to summary judgment against principal and between each other.
"Sureties, whether bound on the contract or instrument with the principal debtor as joint or joint and several obligors or promisors, as accommodation drawers, acceptors or endorsers of a bill of exchange or in any other manner, are entitled to a summary judgment against their principal and between each other, by motion in the circuit court on three days' notice thereof, in the cases, and in the following manner.
"(1) Against the principal debtor:
 "a. When a judgment has been obtained against the surety which he has satisfied, either wholly or in part, for the amount paid and interest;
 "b. When a surety or sureties are sued without their principal upon notice given to the principal of the pending action if judgment is obtained against the surety, judgment for the same amount must be entered against the principal in favor of the surety.
"(2) Between sureties:
 "a. A surety who has paid the debt of his principal may recover of each of his cosureties their aliquot proportion of the debt, and, if any of the cosureties are insolvent, the proportion of such insolvent must be excluded from the estimate, and judgment be entered against the remaining solvent sureties for their proportion of the debt as if such insolvent were not a cosurety.
 "b. When an action is pending against one or more sureties either in connection with or without their principal, then if the principal is insolvent or dead, the surety so sued may recover on notice of the pending action judgment against such of the cosureties as are not used [sic, sued] in that action for their aliquot proportion of the debt, excluding from the estimate the proportion of such of the sureties as are insolvent as if such insolvent had not been a surety."
[2] Apparently, proper service of process was never obtained on the Moseses.
[3] The Laynes are incorrect in their argument that the law of contribution among cosureties requires one party to pay the debt completely. Section 8-3-9, Ala. Code 1975, states:
 "All of the foregoing provisions of this article shall apply to cases where there are more than one surety, so as to enable a surety discharging a joint debt, wholly or in part, either pending the action or after joint or several judgments, to control the same against his cosureties for the purpose of compelling them to contribute their respective shares of the amount so paid by him."
(Emphasis added.)
Reading § 8-3-9 in pari materia with §8-3-42, Ala. Code 1975, which speaks of the surety's paying his principal's debt "wholly or in part," we conclude that a surety need only pay more than his pro-rata share of the debt to be entitled to seek contribution from cosureties. See also,Nation v. Roberts, 20 Ala. 544 (1852); 18 Am.Jur.2dContribution § 13 (1985); and 18 C.J.S.Contribution § 7 (1990). *Page 409