**BONDY'S FORD, INC., Plaintiff,**

v.

**STERLING TRUCK CORPORATION, Defendant.**

**No. CIV. A. 00–T–358–S.**

United States District Court, M.D. Alabama, Southern Division.

June 28, 2001.

William Lovard Lee, III, Lee & McInish, Dothan, AL, Robert A. Huffaker, Rachel Sanders–Cochran, Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, AL, for Plaintiff.

Dow T. Huskey, Jr., Dothan, Jon P. Christiansen, Brian W. McGrath, Jonathan

J. Van Handel, Foley & Lardner, Milwaukee, WI, for Defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Bondy's Ford, Inc., filed this lawsuit in the Circuit Court for Houston County, Alabama, against defendant Sterling Truck Corporation alleging claims for breach of contract and violation of the Alabama Motor Vehicle Franchise Act, 1975 Ala.Code §§ 8–20–1 through 8–20–13. Bondy's Ford bases its claims on a contractual "Dealer Sales and Service Agreement" it entered into with Sterling Truck. Sterling Truck removed the suit to this court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332 (diversity of citizenship), 1441 (removal).

This cause is now before the court on Sterling Truck's motions to dismiss or stay this action pending arbitration. Sterling Truck relies on 9 U.S.C.A. §§ 1–16, commonly known as the Federal Arbitration Act or FAA. For the reasons stated below, this case will be stayed pending arbitration.

## I. BACKGROUND

Bondy's Ford is a motor vehicle dealer in Dothan, Alabama. In 1998, Bondy's Ford contracted with Sterling Truck to become an authorized Sterling Truck dealer. The contract was drafted exclusively by Sterling Truck, and, by its terms, provides for arbitration of all disputes: It states that "any claim, controversy, protest, or dispute ... relating to or arising from this Agreement, or any claim of breach of the Agreement, or of the relationship [between the parties] ... shall be settled by arbitration."[1] The contract specifies that Ohio law governs its construction,[2] that the obligations and rights conferred by it are to be exercised in compliance with valid local law,[3] and that any provisions of the agreement that contravene local law are to be severed.[4]

In June 1999, Sterling Truck notified Bondy's Ford that, in Sterling Truck's opinion, Bondy's Ford was not adequately performing its obligations under the contract. Sterling Truck gave Bondy's Ford until December 15, 1999, to cure the alleged deficient performance. After the deadline passed, Sterling Truck was still not satisfied with Bondy's Ford's performance and, as provided by ¶ XV(K) of the dealership agreement between the two, commenced arbitration seeking a declaration that Sterling Truck has the right to terminate its relationship with Bondy's Ford under the agreement. Bondy's Ford responded by filing the instant lawsuit.

---

1. Dealer Sales and Service Agreement, ¶ XV(K) (Appendix 1 to Plaintiff's memorandum in opposition to Sterling Truck's motions to dismiss or to stay pending arbitration).

2. *See id.* ¶ XVII(G).

3. *See id.* ¶ XVIII(*I*), which provides:
   "If the valid law of any jurisdiction is applicable to the performance of any obligation or the exercise of any right under this Agreement, the obligation shall be exercised in accordance with such law to the extent, and only to the extent, that such law shall make mandatory the performance of such obligation or the exercise of such right oth-er than in accordance with the provisions of this Agreement. All the provisions of this Agreement shall be construed in light of this Paragraph XVIII(*I*)."

4. *See id.* ¶ XVIII(H), which provides:
   "This agreement is a general form intended for use throughout the United States of America. Any provision of this Agreement which in any way contravenes any law of any relevant jurisdiction shall be deemed not to be a part of this Agreement in such jurisdiction, and shall not, because of any such contravention, be deemed to in any way invalidate this Agreement or any part thereof."

## II. DISCUSSION

Bondy's Ford has made four arguments why this suit may not be dismissed or stayed pending arbitration of the parties' dispute: (1) the anti-arbitration provision in the Alabama Motor Vehicle Franchise Act, 1975 Ala.Code § 8–20–4, has not been preempted by federal law in favor of arbitration; (2) the arbitration clause is severed from the rest of the agreement and may not be enforced; (3) the parties explicitly contracted for Alabama law—which prohibits arbitration of these claims—to govern their dispute; and (4) the arbitration provision as written is unconscionable. The court takes up each of these arguments in turn.

### A. Preemption

To be sure, the Alabama Motor Vehicle Franchise Act prohibits binding arbitration. 1975 Ala.Code § 8–20–4(1)(m) provides, in part, that it is an "unfair and deceptive trade practice" for "any manufacturer ... to coerce or attempt to coerce any motor vehicle dealer ... [t]o prospectively assent ... to require any controversy between a new motor vehicle dealer and a manufacturer to be referred to any person other than the duly constituted courts of this state or the United States, if the referral would be binding on the new motor vehicle dealer." Bondy's Ford, however concedes that the FAA preempts state law that conflicts with the FAA and that it evidences a national policy in favor of arbitration. Bondy's Ford argues, however, that where Congress has acted to preclude a waiver of a judicial forum for resolving a dispute, then state law to the same effect does not contravene the FAA and is not preempted. Bondy's Ford is correct that state law, when in agreement with a Congressional mandate that creates an exception to the FAA, is not preempted by that statute. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226–27, 107 S.Ct. 2332, 2337–38, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627–28, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985). In this case, Bondy's Ford asserts that Congress precluded the arbitration of claims arising out of franchise agreements between automobile dealers and manufacturers when it enacted the Dealer's Day in Court Act (DDCA), 15 U.S.C.A. §§ 1221–1225. This issue, whether the DDCA carves out an exception to the FAA, appears to be one of first impression.[5]

In *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* the Supreme Court endorsed a two-part approach to determining whether a statutory right is not subject to the FAA. First, the trial court should answer the question whether "the arbitration clause at issue may not be read to encompass the statutory [ ]claims." 473 U.S. at 624, 105 S.Ct. at 3352; and the answer here is undoubtedly yes. The FAA "plac[es] arbitration agreements upon the same footing as other contracts." *McMahon,* 482 U.S. at 225–26, 107 S.Ct. at 2337 (citations omitted). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. Statutorily created causes of action are no exception to the rule that arbitration agreements should be enforced according to their terms. *Mitsubishi,* 473 U.S. at 626–27, 105 S.Ct. at 3354. Moreover, as a matter of contractual interpretation, there is no question that the broadly worded arbitration clause between Bondy's

---

**5.** The only federal court that appears to have confronted the question declined to answer it, and resolved the case before it on other grounds. *See Saturn Distribution Corp. v. Williams,* 905 F.2d 719, 722 n. 2 (4th Cir. 1990) (en banc).

Ford and Sterling Truck reaches such statutory claims and rights as those based on the DDCA.

Having answered yes to the first question, the court turns to the second question posed in *Mitsubishi:* Whether, although "the parties' agreement to arbitrate reach[es] the statutory issues, ... [there are] legal constraints external to the parties' agreement [that] foreclose[ ] the arbitration of those claims." *Id.* at 628, 105 S.Ct. at 3355. In other words, "whether [the party]'s ... claims are nonarbitrable even though it has agreed to arbitrate them." *Id.* Here, Bondy's Ford contends that the DDCA is a legal constraint external to its agreement with Sterling Truck that forecloses the arbitration of its claims against Sterling Truck.

"Agreements to arbitrate are essentially forum-selection clauses," *Cunningham v. Fleetwood Homes of Georgia, Inc.,* 253 F.3d 611, 617 (2001); *see also Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974), and by "agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354. However, Congress may limit or prohibit waiver of a judicial forum for specific statutory claims. *See McMahon,* 482 U.S. at 227, 107 S.Ct. at 2337–38. To deduce such an intent, reviewing courts must scrutinize a statute's text and legislative history, and ascertain whether an inherent conflict exists between enforcement of the arbitration agreement and the statute's underlying purposes. *Id.*

As in any case of statutory interpretation, the court looks first to the text of the statute. The DDCA enables automobile dealers to bring suit against manufacturers for "failure ... to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer." 15 U.S.C.A. § 1222. The statute creates a federal right and federal cause of action. *See, e.g., Carroll Kenworth Truck Sales, Inc. v. Kenworth Truck Co.,* 781 F.2d 1520, 1525 (11th Cir.1986). Section 1222 delineates the elements of a violation of the act and a statutory defense to dealers' claims. *See* 15 U.S.C.A. § 1222. Section 1222 clearly and unambiguously permits a dealer to bring suit to enforce rights under the act "in any district court of the United States in the district in which [the] manufacturer resides, or is found, or has an agent." *Id.*

The language of § 1222, however, does not support the conclusion that Congress intended the DDCA to preclude arbitration of DDCA claims, or to close off other avenues of dispute resolution. Under the terms of the statute, a plaintiff "may bring suit," 15 U.S.C.A. § 1222, in federal district court. This language is permissive, not mandatory, as to the forum in which a DDCA claim may be brought. It is unmistakable evidence that Congress intended to open federal courts to DDCA claims. But such permissive language falls far short of itself supporting the conclusion that this provision, while opening federal courts, closes other fora. Thus, the plain terms of the DDCA do not support the proposal that Congress sought to exempt DDCA claims from arbitration under the FAA.

Next, the court turns to the statute's legislative history. Bondy's Ford bases its arguments about the DDCA's legislative history on a report by the Judiciary Committee of the House of Representatives on the DDCA. *See* H.R.Rep. No. 2850, 84th Cong., 2nd Sess.1956, 1956 U.S.C.C.A.N. 4596, 1956 WL 5114 (Leg. Hist). The portions of the Judiciary Committee's report to which Bondy's

Ford has drawn the court's attention indicate that Congress was concerned with the disparity of power between automobile dealers and manufacturers when it enacted the DDCA.[6] A careful assessment of the report, however, reveals that Congress sought to redress that imbalance by creating a cause of action, the primary element of which is good faith, and not to invalidate dispute resolution mechanisms agreed upon by the parties. The report unequivocally states that "The principal effect of the bill as amended by the committee is to give the dealer a right of action against the manufacturer, where the manufacturer fails to act in a fair and equitable manner so as to guarantee the dealer freedom from coercion, intimidation, or threats of coercion or intimidation." *Id.* at \*8. Although the report notes that "irrespective of contractual provisions, [the DDCA] grants a right of review in the Federal courts of disputes between automobile manufacturers and their dealers," *id.* at \*6, it would be a mistake to interpret this as evidence of intent to override contractual dispute-resolution mechanisms. The report makes clear that Congress sought to require the good faith of the parties to be considered in adjudicating DDCA claims and to prevent the nullification of provisions requiring good-faith dealing. The report observes that, "Confronted with express provisions in the dealer's franchise, courts have been reluctant to impose a condition of good faith on the part of the manufac-

turer." *Id.* at \*5. The DDCA itself codified the good-faith requirement that was being read out of franchise agreements. That is, by enacting the DDCA, Congress sought to ensure that contracts between dealers were fairly concluded and that their terms would be given effect, not that contract terms would be nullified to ensure federal judicial review of DDCA claims. The legislative history of the DDCA, as Bondy's has presented it, does not show that Congress intended that DDCA claims were not to be subject to arbitration under the FAA.

Next, the court turns to the purposes of the DDCA itself. The purpose of the statute is to permit dealers to bring claims against manufacturers who fail to act in good faith. This purpose is most broadly served if a dealer can invoke DDCA rights whatever the forum: federal court, state court, arbitration, or some other dispute-resolution mechanism. It would create a hindrance to the enforcement of the DDCA's provisions to construe its purpose as giving dealers a federal right and then restricting the forum in which they may seek to vindicate that right.

It is also clear that the substantive rights granted by the DDCA are protected whether DDCA claims are heard before arbitral tribunals or judicial fora. As the Supreme Court unequivocally held, "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to

6. Bondy's Ford draws the court's attention to the following:

"Concentration of economic power in the automobile manufacturing industry of the United States has developed to the point where legislation is required to remedy the manifest disparity in the ability of franchised dealers of automotive vehicles to bargain with their manufacturers.... The bill creates a cause of action where none previously existed in that, irrespective of contractual provisions, it grants a right of

review in the Federal courts of disputes between automobile manufacturers and their dealers.... The bill as amended proceeds from the conclusion that in the automobile industry, concentration of economic power has increased to the degree that traditional contractual concepts are no longer adequate to protect the automobile dealers under their franchises."

See H.R.Rep. No. 2850, 84th Cong., 2nd Sess. 1956, 1956 U.S.C.C.A.N. 4596, 1956 WL 5114 at \*6 (Leg.Hist).

their resolution in an arbitral, rather than judicial, forum." *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354. Although Congress was concerned by the imbalance in contracting power between automobile dealers and manufacturers, there is no indication that Congress intended or implied that arbitration of such claims would be less effective than federal-court adjudication. This court does not believe that the purposes of the DDCA require construing it as creating an exception to the FAA.

■ In the absence of evidence of Congressional intent based in the text, legislative history, or purpose of the DDCA, the court will not violate a fundamental canon of statutory construction: that, when possible, statutes should be construed so as not to be in conflict with each other. *See Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *Araya v. McLelland,* 525 F.2d 1194 (5th Cir.1976).[7] Reading the DDCA as Bondy's Ford urges would bring the statute into direct and unwarranted conflict with the FAA. The court will decline Bondy's Ford's invitation to embark upon this course. The DDCA does not carve out an exception to the FAA. *Cf. Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 485–86, 109 S.Ct. 1917, 1922, 104 L.Ed.2d 526 (1989) (claims under Securities Act of 1933. are subject to binding arbitration); *McMahon,* 482 U.S. at 238, 107 S.Ct. at 2343 (claims under Securities Exchange Act of 1934 are subject to binding arbitration). And it therefore further follows that, because DDCA claims do not fall outside the FAA, claims under the Alabama Motor Vehicle Franchise.Act do not either.

### B. Severability

■ The dealer's agreement between Bondy's Ford and Sterling Truck provides that if any of its terms conflict with local law, the conflicting provisions of the agreement are to be severed from the contract.[8] Bondy's Ford essentially contends that because Alabama's Motor Vehicle Franchise Act, 1975 Ala.Code § 8–20–4, and Alabama's general anti-arbitration law, 1975 Ala.Code § 8–1–41(3), preclude arbitration of claims between dealers and manufacturers, the arbitration clause should be deemed severed.[9] Therefore, Bondy's Ford reasons, the dispute resolution clause is a nullity and may not be enforced by this court.

Bondy's Ford bases this argument on basic contract principles: That is, that the parties agreed to sever from their contract any of its provisions that were unlawful by the laws of any relevant jurisdictions, and this court must accordingly give effect to the agreement of the parties. However, Bondy's Ford is mistaken.

Bondy's Ford's mistake arises because it assumes that Alabama's statutes authoritatively speak to the law in Alabama in the face of preemptive federal law. This court, however, concludes that the law in Alabama does not preclude the arbitration of the claims that are at issue here. Even though Alabama's statutes express a strong disapproval of arbitration, those statutes are preempted by the FAA. The

---

7. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

8. *See* Dealer Sales and Service Agreement ¶ XVIII(H), *supra* note 4.

9. 1975 Ala.Code § 8–1–41(3) provides:

"Obligations which cannot be specifically enforced.

- The following obligations cannot be specifically enforced:

\*    \*    \*    \*    \*    \*

(3) An agreement to submit a controversy to arbitration."

FAA was a Congressional declaration of a national policy favoring arbitration. *See Southland Corp. v. Keating,* 465 U.S. 1, 15–17, 104 S.Ct. 852, 860–61, 79 L.Ed.2d 1 (1984). The act created a body of federal substantive law that applies both in federal and state courts. *See id.* Where state law invalidates an arbitration provision that falls within the ambit of the FAA, that state law is in violation of the supremacy clause of the United States Constitution. *See* U.S. Const. art. VI, cl. 2. And state law that conflicts with valid federal law is "without effect," *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992), or "void." *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 327, 4 L.Ed. 579 (1819).

Thus, Alabama statutes that preclude arbitration in cases governed by the FAA are void and are not the law in Alabama. *See Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 272, 115 S.Ct. 834, 839, 130 L.Ed.2d 753 (1995) (reversing the Alabama Supreme Court and holding that "state courts cannot apply state statutes that invalidate arbitration agreements"). Indeed, the Alabama Supreme Court now recognizes that Alabama laws that preclude arbitration and are preempted by the FAA are without effect. *See, e.g., Quality Truck & Auto Sales, Inc. v. Yassine,* 730 So.2d 1164, 1168 (Ala.1999) (holding that, in § 2 of the FAA, Congress precluded States from singling out arbitration clauses for suspect status, and that Alabama courts must compel arbitration if the contract containing the arbitration clause is enforceable); *see also A.G. Edwards & Sons, Inc. v. Syvrud,* 597 So.2d 197, 198 (Ala.1992). In short, the FAA is the law of Alabama.

If this court were to hold that the law of Alabama precluded arbitration of the claims at issue in the instant case, it would, in effect, decide that federal law is not the law in Alabama and would render the supremacy clause of the federal constitution a nullity. *Compare* Curtis A. Bradley & Jack L. Goldsmith, *Federal Courts and the Incorporation of International Law,* 111 Harv. L.Rev. 2260 (1998), *with* Harold Hongju Koh, *Is International Law Really State Law?,* 111 Harv. L.Rev. 1824 (1998). This court is without authority to so decide.

### C. The Parties Contracted for Alabama Law

■ Paragraph XVIII(*I*) of the dealer's agreement provides that: "If the valid law of any jurisdiction is applicable to the performance of any obligation or the exercise of any right under this Agreement, the obligation shall be exercised in accordance with such law." [10] Bondy's Ford claims that this provision is a choice-of-law clause, and that it indicates that the parties contracted for Alabama's anti-arbitration provisions to govern their agreement. This interpretation is fatally flawed.

Of course, it is an axiom of contract law that "the intention of the parties controls in construing a written contract." *Loerch v. National Bank of Commerce,* 624 So.2d 552, 553 (Ala.1993); *Murray v. Alfab, Inc.,* 601 So.2d 878, 886 (Ala.1992); *see also Mitsubishi,* 473 U.S. at 626, 105 S.Ct. at 3354 The court must therefore determine the intent of the parties.

As is plain, ¶ XVIII(*I*) is not an explicit choice of Alabama's statutory scheme for regulating the relationship between automobile dealers and manufacturers to govern the dealer's agreement. Instead, it is a limited savings clause that requires the terms of the dealer's agreement to be exercised and enforced according to the valid law of any jurisdiction whose law might apply. Bondy's Ford contends that the law

---

10. Dealer Sales and Service Agreement, ¶ XVIII(*I*), *supra* note 3.

of Alabama is the law of such a jurisdiction. The question before the court, therefore, is not whether the parties have chosen Alabama's statutes over arbitration, but whether the operation of ¶ XVIII(*I*) requires that Alabama's statutory scheme displace arbitration. The court concludes that it does not.

The court need not determine whether Alabama is a relevant jurisdiction whose law applies in this context, because even if Alabama's law applies, it does not conflict with the term of the agreement requiring arbitration. The FAA is, as stated, the law of Alabama. There is therefore no conflict between the law in Alabama and the terms of the contract, and accordingly ¶ XVIII(*I*) cannot require that Alabama's preempted statutory scheme be given effect.

### D. Unconscionability

Bondy's Ford's final argument is that the arbitration provision in the dealer's agreement cannot be enforced because it is unconscionable. Bondy's Ford is correct that the FAA does not require the enforcement of an unconscionable arbitration provision. Section 2 of the FAA prohibits the enforcement of an arbitration agreement which is invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The Supreme Court has held that § 2 "gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision." *Dobson*, 513 U.S. at 281, 115 S.Ct. at 843. Alabama law permits a court to refuse to enforce any contract that is unconscionable. *See* 1975 Ala.Code § 7–2–302; *Wilson v. World Omni Leasing*, 540 So.2d 713 (Ala.1989).

■■■ Alabama law, however, does not have an explicit standard for determining unconscionability. *See Roberson v. Money Tree of Alabama*, 954 F.Supp. 1519, 1524

n. 7 (M.D.Ala.1997) (Thompson, J.) (discussing lack of clarity in Alabama law and in the Uniform Commercial Code). Rather, Alabama courts use the following five factors to determine whether a contract or contract provision is unconscionable: (1) whether one party was uneducated or unsophisticated; (2) whether a party is confronted by an absence of meaningful choice in the contract; (3) whether the contractual terms are unreasonably favorable to one party; (4) whether the parties had unequal bargaining power; and (5) whether there were oppressive, one sided, or patently unfair terms in the contract. *See, e.g., Layne v. Garner*, 612 So.2d 404, 408 (Ala. 1992) (citing *World Omni Leasing*, 540 So.2d at 717); *Lloyd v. Service Corp.*, 453 So.2d 735, 739 (Ala.1984). In addition, Alabama courts recognize that rescinding a contract or portion of a contract is "an extraordinary remedy usually reserved for the protection of the unsophisticated and uneducated." *Marshall v. Mercury Finance Co.*, 550 So.2d 1026, 1028 (Ala.Civ. App.1989) (quoting *E & W Building Material Co. v. American Savings & Loan Ass'n*, 648 F.Supp. 289, 291 (M.D.Ala. 1986)).

■■■ The Alabama Supreme Court has also defined an unconscionable contract as one " 'such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' " *Layne*, 612 So.2d at 408 (quoting *Hume v. United States*, 132 U.S. 406, 410, 10 S.Ct. 134, 136, 33 L.Ed. 393 (1889)). This standard may, in practice, be impossible of proof. But at a minimum, a party may not rely on an abstract principle or theory of a bargain to establish that a contract is unconscionable. Unconscionability must be gauged by the circumstances of the case. *See Stinson v. America's Home Place*, 108 F.Supp.2d 1278, 1286 (M.D.Ala.2000) (Thompson, J.).

 Bondy's Ford contends that the arbitration clause in this agreement is unconscionable because the dealer's agreement requires Bondy's Ford to forgo statutorily mandated rights and benefits and because it violates the public policy of the State of Alabama. However, the precise question in this case is whether the arbitration clause is so unfavorable to Bondy's Ford that it would simply not have been reasonable for it to accept it, given any reasonable choice. *Layne,* 612 So.2d at 408. Insofar as Bondy's Ford contends that the arbitration clause is unconscionable because it contravenes Alabama's franchise law, the argument is without merit and clearly falls far short of what is required to show that an agreement is unconscionable.

To the extent that Bondy's Ford claims that other provisions of the dealer's agreement, such as the waiver of punitive damages, render the contract void because they are unconscionable, the validity or invalidity of these provisions may be argued to the arbitral tribunal, and do not clearly implicate the arbitration clause itself. Courts have consistently held that questions of contractual validity that are not specific to the arbitration clause itself should be heard by the arbitrator. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270 (1967); *Rainbow Investments, Inc. v. Super 8 Motels, Inc.,* 973 F.Supp. 1387 (M.D.Ala.1997) (Thompson, J.); *Capitol Vial, Inc. v. Weber Scientific,* 966 F.Supp. 1108, 1111 (M.D.Ala.1997) (Thompson, J.).

Finally, to the extent that Bondy's Ford claims that enforcement of the arbitration clause would be unconscionable because of the inherent imbalance of bargaining power between automobile dealers and manufacturers, this argument itself is insufficient under Alabama law to show unconscionability. *See Layne,* 612 So.2d at 408. This court cannot conclude that an imbalance in bargaining power, which has been specifically remedied by the DDCA, standing alone would make this franchise agreement void.

None of Bondy's Ford's arguments, therefore, demonstrates that the arbitration clause at issue here is unconscionable.

## III. CONCLUSION

Because Bondy's Ford has not established that the arbitration clause that governs this dispute must not be enforced, Sterling Truck's motions to stay or dismiss these proceedings will be granted to the extent that the proceedings will be stayed.

An appropriate judgment will be entered.