Rel: 10/17/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

OCTOBER TERM, 2014-2015

_____

## 1130698

_____

**Ronald L. Cooper**

v.

**MTA, Inc.**

**Appeal from Madison Circuit Court
(CV-12-901460)**

MAIN, Justice.

Ronald L. Cooper appeals from a summary judgment in favor of MTA, Inc. ("MTA"), in MTA's action against Cooper seeking contribution. We reverse and remand.

## I. Facts and Procedural History

In 1999, Cooper and Robert L. Flowers formed C&F Enterprises, LLC ("C&F"). C&F owned a parcel of property on Meridian Street in Huntsville, upon which it built a shopping center known as College Plaza ("the shopping center"). Subsequently, pursuant to an "Amended and Restated Operating Agreement" dated November 9, 2000 ("the operating agreement"), MTA became a member of C&F. The operating agreement provided that MTA, Flowers, and Cooper each owned a one-third interest in C&F. Section 16.2 of the operating agreement contains a first right of refusal pursuant to which, after giving proper notice, MTA could elect to purchase the shopping center.

On December 27, 2000, C&F borrowed $650,000 from the Southern Development Council, Inc. ("SDC"), a community-development program; that debt is memorialized by a promissory note ("the note"). On the same day, SDC assigned the note to the Small Business Administration ("the SBA"). Cooper and Flowers personally guaranteed the indebtedness owed under the note.

On July 18, 2003, C&F received a foreclosure letter with respect to the note. On July 24, 2003, counsel for MTA sent

1130698

Cooper a letter informing him of MTA's intent to exercise its right of first refusal pursuant to section 16 of the operating agreement.

On October 18, 2012, MTA filed a complaint against Cooper and Flowers.[1] The complaint set forth the following statement of facts:

> "4. On or about December 27, 2000, C&F Enterprises, LLC ('C&F') executed and delivered to Southern Development Council, Inc. ('SDC') promissory note (the 'Note') whereby C&F promised to pay SDC the sum of $650,000.00, with interest determined on the sale of the debenture[2], and agreed to pay reasonable attorney fees for collection. ...

> "5. On or about December 27, 2000, [MTA], Cooper, and Flowers each executed personal guarantees of the indebtedness owed under the Note.

---

[1]Flowers is not a party to this appeal. The record on appeal includes what appears to be an affidavit from Flowers, in which he states, in pertinent part:

> "Though I was a member of C&F Enterprise, LLC. To the best of my knowledge does not exist anymore, at the request of majority partners, MTA and Ronald L Cooper. I, Robert L. Flowers, Jr. was removed from the personal Guarantee of the SBA ... portion of the loan amount. There is a letter removing me as the Guarantor, of which they are aware of. I deny owing any money on this summons of this case."

(Punctuated as in original.)

[2]A "debenture" is "[a] debt secured only by the debtor's earning power, not by a lien on any specific asset." Black's Law Dictionary 486 (9th ed. 2009).

3

"6. As such, [MTA] and [Cooper and Flowers] were each jointly and severally liable for the obligations owed pursuant to the Note.

"7. On or about June 26, 2008, SDC filed a lawsuit against [MTA], C&F, and Cooper, asserting that they were in breach of the Note and Guarantees in the amount of $767,523.10.

"8. On or about August 12, 2010, SDC obtained judgment against [MTA] and C&F in the amount of $767,523.10. Upon information and belief, Cooper was never served in the lawsuit.

"9. On or about October 21, 2011, SDC withdrew the sum of $812,706.00 from monies owed to MTA by the government through the federal offset program.[3] This amount satisfied the judgment and interest thereon.

"10. No contribution to this satisfaction has been made by [Cooper and Flowers]."

---

[3]The referenced "federal offset program" appears to be the "Treasury Offset Program," which "is a centralized offset program, administered by the Bureau of the Fiscal Service's Debt Management Services (DMS), to collect delinquent debts owed to federal agencies and states, ... in accordance with 26 U.S.C. § 6402(d) (collection of debts owed to federal agencies), 31 U.S.C. § 3720A (reduction of tax refund by amount of the debts), and other applicable laws." On the date this opinion was released, this information could be found at http://fiscal.treasury.gov/fsservices/gov/debtColl/dms/top/debt_top.htm; a copy of the Web page containing this definition is available in the case file of the clerk of the Alabama Supreme Court. See Ala. R. Evid. Rule 201(b)(2) (noting that this Court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned").

4

1130698

The complaint alleged a count of contribution and "demand[ed] judgment in [MTA's] favor and against Cooper in the amount of $270,902.00, and Flowers in the amount of $270,902.00." In the alternative, "[MTA] demand[ed] judgment in its favor and against Cooper and Flowers for their individual pro rata contribution shares as determined at trial."

Cooper filed a motion to dismiss; the trial court denied the motion. Cooper then answered the complaint. Thereafter, MTA filed a motion for a summary judgment against Cooper and Flowers. MTA's argument in its motion, in its entirety, is as follows:

> "In Alabama, when a guarantor has paid the debt of a principal, it is entitled to judgment against each co-guarantor in the amount of their individual pro rata shares of the debt. Ala. Code (1975) § 8-3-42(2)(a). The statute specifically states that:
>
>> "'Sureties ... are entitled to a summary judgment against their principal and between each other, by motion in the circuit court on three days' notice thereof ... in the following manner ...
>>
>>> "'(2) Between sureties:
>>>
>>>> "'a. A surety who has paid the debt of his principal may recover of each of his cosureties their aliquot proportion of

5

the debt, and, if any of the cosureties are insolvent, the proportion of such insolvent must be excluded from the estimate, and judgment be entered against the remaining solvent sureties for their proportion of the debt as if such insolvent were not a cosurety.'

"Id. Although the statute in question sets out remedies between 'sureties,' it has been clearly established in Alabama that the terms 'surety' and 'guarantor' are interchangeable in this context. Specifically, the meaning of 'surety' for the purpose of Ala. Code [1975,] § 8-3-1 et [seq.,] is 'one who has been forced to pay a debt that was the primary obligation of another, and which the latter ought to have paid in exoneration of the former.' Moody v. Hinton, 603 So. 2d 912 (Ala. 1992) (Shores, J., dissenting); see also, Bradley v. Bentley, 163 So. 351, 355 (Ala. 1935); City of Birmingham v. Trammel, 101 So. 2d 259, 260 (Ala. 1958).

"Alabama law specifically provides that this remedy is to be granted in the form of summary judgment. Ala. Code [1975,] § 8-3-42. The right to contribution against co-guarantors is a well-established, historical principle of Alabama law. See Dubberly v. Black's Adm'r, 38 Ala. 193 (Ala. 1861); Douglass v. Orman, 119 So. 601 (Ala. App. 1928); Layne v. Garner, 612 So. 2d 404 (Ala. 1992). This right is absolute absent an agreement between the parties limiting the right of contribution between co-guarantors. Ex parte Harris, 837 So. 2d 283, 287 (Ala. 2002). No such agreement exists in this case. ...

6

"The full amount of the debt and interest which MTA paid in order to satisfy ... C&F's liability to SDC is $812,706.00. ... As there were three guarantors to this debt (MTA, Cooper, and Flowers), the pro rata share of each guarantor is 1/3 of the total, or $270,902.00. ... For the reasons stated above, no genuine issue of material fact exists as to [MTA's] claim for contribution, and [MTA] is entitled to judgment as a matter of law against Cooper in the amount of $270,902.00 and Flowers in the amount of $270,902.00."

MTA supported its summary-judgment motion with, among other evidence, the affidavit of Robert Chastine, the president of MTA. In his affidavit, Chastine stated, in pertinent part, that, "[o]n or about October 21, 2011, [SDC] withdrew the sum of $812,706.00 from monies owed to MTA by the government through the federal offset program. This withdrawal satisfied the judgment, as well as the post-judgment interest that had accrued between the date of the judgment and the date of the satisfaction." Chastine also stated that "[n]o contribution to MTA's satisfaction of C&F's debt to SDC has been made by Cooper or Flowers, and no agreement exists among MTA, Cooper, and Flowers limiting the right of contribution between them."

Cooper filed a response to MTA's summary-judgment motion. In his response, Cooper argued, in relevant part:

"MTA correctly acknowledges in its memorandum that its right to contribution, if any, is not absolute if there is an agreement between the parties, limiting the right of contribution between the co-guarantors. See Ex parte Harris, 837 So. 2d 283, 287 (Ala. 2002). In this case, MTA chose to exercise its first right of refusal to purchase the encumbered property, and in doing so, agreed to assume full responsibility for the repayment of the SBA loan. ... As such, MTA has effectively waived its right, if any, to contribution. ..."

Cooper supported his response to MTA's summary-judgment motion with his own affidavit, in which he stated, in pertinent part:

"5. On or about December 27, 2000, C&F borrowed $650,000.00 from [SDC]. That debt is memorialized by the promissory note ('the Note')....

"6. On December 27, 2000, the SDC assigned the Note to the Small Business Administration 'SBA.'

"7. Thereafter, C&F received a foreclosure letter with respect to the SBA loan. The imminent sale of C&F's assets triggered the first right of refusal granted to MTA pursuant to Sections 16.1 and 16.2 of the Operating Agreement. ...

"8. On or about July 24, 2003, MTA notified me that it intended to exercise its first right of refusal. ... MTA demanded me to immediately relinquish and transfer to MTA my entire interest in C&F. ...

"9. On August 1, 2003, I executed an 'Assignment Of interest in C&F Enterprises, LLC, wherein I sold, assigned, and transferred to MTA my entire interest in C&F. ...

8

"10. As a result, MTA then assumed full responsibility of the SBA loan. ...

"11. Notwithstanding the allegations in the Complaint, I have no knowledge of the factual circumstances associated with the alleged payment made, via the federal offset program, to the SBA."

Cooper also supported his response to the summary-judgment motion with a letter, dated July 24, 2003, that MTA sent to Cooper, in which MTA stated, in pertinent part:

"As you probably are aware, C&F Enterprises has received a foreclosure letter with respect to its SBA loan. This imminent sale of C&F Enterprises' assets has triggered the right of first refusal granted to MTA in section 16 of C&F Enterprises' current Operating Agreement, giving MTA the right to purchase the College Plaza Shopping Center.

"By this letter MTA is hereby notifying you, as required by section 16.2 of the Operating Agreement, of its intent to exercise its right of first refusal. To this end, MTA expects you to immediately relinquish and transfer to MTA your entire interest in C&F Enterprises, MTA will then assume full responsibility for the repayment of the SBA loan."

Cooper further supported his response to the summary-judgment motion with a document entitled "Assignment of Interest in C&F Enterprises, LLC[,] an Alabama Limited Liability Company." That document, purporting to assign Cooper's interest in C&F to MTA, signed by Cooper and a witness, provides:

1130698

"For adequate consideration, the receipt of which is hereby acknowledged, Ronald L. Cooper hereby sells, assigns and transfers unto MTA, Inc., an Alabama corporation, Ronald L. Cooper's entire interest in C&F Enterprises, an Alabama limited liability company, constituting thirty three and one-third membership units and a thirty three and one-third percentage interest in C&F Enterprises, LLC, and the undersigned hereby further irrevocably constitutes and appoints the [sic] Robert Chastine to transfer the said interests on the books of the within-named limited liability company, with full power of substitution in the premises."

MTA filed a reply to Cooper's response to its summary-judgment motion, stating, in pertinent part:

"SUPPLEMENTAL FACTS

"1. On or about July 24, 2003, D. Ashley Jones, counsel for [MTA] and its principal, Robert Chastine, sent Ronald L. Cooper ('Cooper') a letter informing him of its intent to exercise its right of first refusal (the 'Demand Letter'). ...

"2. The Demand Letter stated that 'Time is of the essence,' and gave Cooper a period of seven days in which to execute and return a transfer of membership interest. ...

"3. No response was ever received from Cooper, and no executed assignment of membership interest was ever received. ...

"4. In further support of [MTA's] Motion for Summary Judgment, true and correct copies of the collection letters from the Department of the Treasury evidencing the transfers referenced in the Complaint and Motion for Summary Judgment are attached hereto as Exhibit '2.'

10

"<u>SUPPLEMENTAL ARGUMENT</u>

"A few days before the initial hearing on [MTA's] Motion for Summary Judgment, [Cooper] filed its response to [MTA's] motion, to which was attached the Demand Letter, as well as a purported assignment of Cooper's interest in C&F Enterprises, LLC ('C&F') to [MTA] (the 'Assignment'). ... The Assignment was never received -- in fact, no response to the letter requesting the executed Assignment was received whatsoever. ...

"Regardless of the receipt of the Assignment, that document is insufficient to constitute a transfer of the membership of Ronald L. Cooper to MTA, Inc. Section 9 of the Operating Agreement of C&F (the 'Operating Agreement') sets out the method by which a transfer of membership interest in C&F may be formalized. ... Section 9.1 of the Operating Agreement provides that any assignment of membership interest must be:

> "'1. Executed both by the assignor and the assignee;
>
> "'2. Received by the members;
>
> "'3. Recorded on the books of C&F;
>
> "'4. Approved by prior written consent of at least 75% of outstanding members; and
>
> "'5. Accompanied by an opinion of counsel that said assignment will not contravene applicable law, terminate C&F, or jeopardize C&F's tax status. ...'

"The Assignment clearly fails to meet these requirements, as it was not signed by [MTA] .... Furthermore, the Assignment was never received by [MTA's] Counsel .... No evidence in support of the remaining requirements has been submitted by Cooper,

but the sole fact that [MTA] did not sign the Assignment is enough to render the Assignment invalid pursuant to Section 9 of the Operating Agreement.

"It is also clear that the Assignment is not a transfer pursuant to the first right of refusal set out in Section 11 of the Operating Agreement. Such a transfer would require:

"1. Written notice by the seller (in this case, Cooper) to the purchaser (in this case, [MTA]) of the seller's intent to sell, including the price and terms the seller is willing to accept; ...

"2. Written acceptance from the purchaser (MTA) of said notice within 30 days of the seller's notice; ... and

"3. An execution of the purchase within 75 days of the seller's notice of intent to sell ....

"No evidence supporting any of these three requirements has been submitted by Cooper. Finally, the Court should note that the Demand Letter refers to a right of first refusal set out in Section 16.2 of the Operating Agreement. ... However, the first right of refusal set out in Section 16[4] is only a first right of refusal entitling MTA to purchase a shopping center owned by C&F, not a right of first refusal entitling MTA to purchase Cooper's membership interest. As such, any transfer of membership interest between the members of C&F would have to be executed pursuant to section 9[5] or

---

[4]Section 16 of the operating agreement is entitled "First Right of Refusal as to Shopping Center."

[5]Section 9 of the operating agreement is entitled "Transfer of a Member's Interest."

12

section 11[6] of the Operating Agreement. As described above, the Assignment, even if it was executed, would not operate as a transfer of Cooper's membership interest in C&F to [MTA]."

Cooper filed a supplemental response to his original response to the summary-judgment motion, stating, in pertinent part:

"1. MTA supplements its summary judgment motion by arguing that Ashley Jones never received Cooper's assignment of interest in C&F Enterprises, LLC ('C&F'). In support, MTA attaches the Affidavit of Ashley Jones who claims that he does not recall ever receiving the Assignment. Nevertheless, Cooper has previously stated in his Affidavit that he executed the assignment of his membership interest in accordance with MTA's instructions. See paragraph 9 of the Affidavit of Ron Cooper ('Cooper Affidavit') .... Therefore, an issue of fact exists as to whether MTA exercised its first right of refusal, thereby purchasing Cooper's interest in C&F Enterprises and assuming responsibility of C&F's debt.

"2. Further discovery is needed to resolve issues of fact regarding MTA's exercise of its first right of refusal and Cooper's assignment of his membership interest. Specifically, Cooper is issuing subpoenas to take the depositions of: (i) Erskine Valrie, the former Small Business [Administration] officer that handled the loan at issue in this case, (ii) Robert Flowers, the co-defendant who failed to appear in this case; and (iii) Ashley Jones, MTA's former transactional attorney. ...

---

[6]Section 11 of the operating agreement is entitled "First Right of Refusal as to Member Interest."

"3. MTA further supplements its summary-judgment motion with attached collection letters from the Department of Treasury that MTA claims purport to transfer the funds via the federal offset program to satisfy the C&F debt at issue in this lawsuit. However, MTA has failed to produce evidence that the withdrawals via the federal offset program were used to satisfy the SBA's loan to C&F Enterprises. ... While MTA attached collection letters from the Department of Treasury, those collection letters do not reference C&F Enterprises in any way. Moreover, there is no explanation from Robert Chastine, MTA's corporate representative, authenticating these facts. As such, the deposition of Robert Chastine is also needed to develop these factual issues. ...

"4. Finally, MTA's supplemental submission raises additional factual issues regarding the scope of the first right of refusal. MTA argues that the first right of refusal found in Section 16.2 of the Operating Agreement only entitles MTA to purchase the shopping center and does not entitle MTA to purchase Cooper's membership interest. This argument is inconsistent with MTA's prior position as articulated by its counsel in his July 24, 2003, letter. ... Moreover, the SBA loan documents, which are attached to MTA's Complaint, and the operating agreement, when read in their entirety, are evidence that C&F Enterprises was formed to construct and lease the College Plaza Shopping Center. Therefore, MTA's last-minute attempt to manipulate the terms of the Operating Agreement is disingenuous."

After a hearing, the trial court entered an order granting MTA's summary-judgment motion and stating: "Judgment is hereby entered in favor of plaintiff MTA, Inc., and against defendants Ronald Cooper and Robert Flowers in amount of $270,902.00, plus costs of this action." The trial court's

14

order included no specific findings of fact. Cooper filed a Rule 59(e), Ala. R. Civ. P., motion, arguing, in sum, that, "[i]n this case, MTA chose to exercise its first right of refusal to purchase the encumbered property, and in doing so, agreed to assume full responsibility for the repayment of the SBA loan." The trial court denied Cooper's postjudgment motion. Cooper appealed.

## II. Standard of Review

"Our standard of review of a summary judgment is well settled:

"'"The standard of review applicable to a summary judgment is the same as the standard for granting the motion...." McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So. 2d 957, 958 (Ala. 1992).

"'"A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party

15

1130698

and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present 'substantial evidence' creating a genuine issue of material fact -- 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Ala. Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989)."

"'Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So. 2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So. 2d 337, 342 (Ala. 2004).'

"Pritchett v. ICN Med. Alliance, Inc., 938 So. 2d 933, 935 (Ala. 2006)."

Smith v. Fisher, 143 So. 3d 110, 122-23 (Ala. 2013).

### III. Analysis

We conclude that the trial court erred in granting MTA's motion for a summary judgment. The legal arguments presented by the parties and the substantial evidentiary documentation supporting those arguments[7] show that there exist a number of

---

[7]The parties collectively submitted to the trial court no fewer than seven affidavits, along with numerous other documentary evidence.

16

disputed issues of material fact in this case. The following constitute some of, but perhaps not all, the disputed issues of material fact that make a summary judgment inappropriate in this case:

In his affidavit, Chastine, who, as noted, is the president of MTA, stated that, "[o]n or about October 21, 2011, [SDC] withdrew the sum of $812,706.00 from monies owed to MTA by the government through the federal offset program. This withdrawal satisfied the judgment, as well as the post-judgment interest that had accrued between the date of the judgment and the date of the satisfaction." However, in her affidavit, Deanna Smith, one of Cooper's attorneys, stated that "MTA has failed to produce evidence that the withdrawals via the federal offset program were used to satisfy the SBA's loan to C&F Enterprises. While MTA attached collection letters from the Department of Treasury, those collection letters do not reference C&F Enterprises in any way."

In his affidavit, Cooper stated that, "[o]n August 1, 2003, I executed an 'Assignment Of interest in C&F Enterprises, wherein I sold, assigned, and transferred to MTA my entire interest in C&F [Enterprises, LLC]." "As a result,

17

MTA then assumed full responsibility for the repayment of the SBA loan." Also, in her affidavit, Dana M. Moore, the executive director of SDC, stated that she was aware that "Cooper had executed an assignment transferring his interest in C&F Enterprises to MTA." However, in his affidavit, D. Ashley Jones, counsel for MTA and Chastine in July 2003, stated that he sent a letter to Cooper on July 24, 2003, "informing him of said pending foreclosure [of C&F Enterprises, LLC], and instructing him to execute an assignment of interest to MTA, Inc. within seven days" but that Jones "never received any communication in return from ... Cooper and never received the executed Assignment of Interest ...."

Furthermore, there exists an issue of material fact as to whether Cooper's purported assignment to MTA of his interest in C&F was an assignment of Cooper's interest in C&F pursuant to section 11 of the operating agreement; an assignment of Cooper's interest in the shopping center operated by C&F pursuant to section 16 of the operating agreement; or an assignment of Cooper's interests under both sections 11 and 16 of the operating agreement. In its supplement to its summary-

18

judgment motion, MTA argued that, "[f]inally, the Court should note that the Demand Letter refers to a right of first refusal set out in Section 16.2 of the Operating Agreement. ... However, the first right of refusal set out in Section 16 is only a first right of refusal entitling MTA to purchase a shopping center owned by C&F, not a right of first refusal entitling MTA to purchase Cooper's membership interest." However, the affidavit of Jones, then MTA's attorney, does not distinguish between MTA's purchasing Cooper's interest in C&F as opposed to or in addition to Cooper's interest in the shopping center owned by C&F. As noted above, Jones stated only that he "never received the executed Assignment of Interest." Furthermore, the purported "Assignment of Interest" document to which Jones referred is not specific as to whether Cooper assigned to MTA his interest in C&F as opposed to or in addition to his interest in the shopping center.

In sum, it is clear that there exist several issues of material fact that preclude a summary judgment in this case. Accordingly, the trial court's summary judgment in favor of MTA is due to be reversed.

## IV. Conclusion

Because genuine issues of material fact exist in this case, the trial court erred in granting MTA's motion for a summary judgment. Therefore, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Moore, C.J., and Murdock and Bryan, JJ., concur.

Bolin, J., concurs in the result.